*240 JUSTICE COTTER
delivered the Opinion of the Court.
¶1 Bradley Kant was arrested and charged with three drug-related criminal charges, two of which were felonies. The charges were brought following a warranted search of Kant’s home and the seizure of 67 live marijuana plants and numerous miscellaneous paraphernalia. Kant appeals the Sixth Judicial District Court’s denial of his combined motion to suppress and dismiss. We affirm.
ISSUE
¶2 A restatement of the issue on appeal is:
¶3 Did the District Court err in denying Kant’s motion to suppress and dismiss?
FACTUAL AND PROCEDURAL BACKGROUND
¶4 During 2010 and 2011, Bradley Kant and his wife, Crystal, held registered caregiver’s licenses under the Montana Marijuana Act authorizing them to grow and distribute marijuana in accordance with then-applicable statutes and regulations. Upon expiration of their licenses, they failed to renew them but continued growing and distributing marijuana.
¶5 In 2012, Detective Tim Barnes, an acting detective for the Park County Sheriffs Office and the Missouri River Task Force, executed a search warrant on a Livingston, Montana home and seized numerous marijuana plants and arrested one individual. This individual informed Barnes that he had gotten his original plants from his neighbor, Brad Kant, who was also growing numerous plants in his home.
¶6 On January 5, 2015, Barnes was informed by a separate confidential source (CS) that Crystal was growing multiple marijuana plants in her home and was delivering marijuana to Vicki Jefferies’ home every Wednesday at approximately 7:00 p.m. The CS claimed that Jefferies in turn supplied Mark Harrison with marijuana. Mark Harrison was the CS’s roommate at that time. The CS provided Barnes with cellphone number, address, and vehicle information about Crystal, Jefferies, and Harrison. Additionally, the CS made statements against self-interest by admitting to smoking marijuana with Jefferies and trading prescription drugs to Jefferies for marijuana.
¶7 On January 14, 2015, Barnes submitted an application for a search warrant to conduct a search of the Kants’ residence. Among other things, Barnes asserted in the application that on Wednesday, January 7, 2015, at 6:43 p.m., A vehicle bearing a license plate registered to Kant was seen arriving at Jefferies’ home. A single *241 unidentified occupant exited the vehicle and entered the home. Barnes also referenced the 2012 tip that Kant was then growing marijuana in his home. On January 9, Barnes interviewed a Livingston Police Officer who lives near Kant. The officer reported that during the hot summer months, a strong odor of fresh marijuana can be detected outside of the Kants’ home. The magistrate granted the warrant and on January 16, 2015, Barnes and another detective executed it. The Kants were cooperative and the detectives seized 67 plants, 12 pounds of prepared product, and multiple items of paraphernalia for growing and distributing.
¶8 On February 3, 2015, the Park County Deputy County Attorney filed an Information against Bradley and Crystal Kant asserting the following criminal offenses: criminal production or manufacture of dangerous drugs, a felony; criminal possession with intent to distribute dangerous drugs, a felony; and criminal possession of drug paraphernalia, a misdemeanor. On February 17, 2015, Kant made his initial appearance and entered a plea of not guilty. On February 25, 2015, Kant moved to suppress all evidence seized during the search of his residence on the grounds that Barnes’ application for the warrant lacked sufficient facts to establish probable cause that the Kants’ home contained drugs or drug-related evidence. Kant sought dismissal of the action against him. The State opposed the motion.
¶9 On April 7, 2015, the District Court denied Kant’s suppression motion. On June 15, 2015, Kant entered into a plea agreement under which charges against Crystal were dismissed, and he pled guilty to criminal possession with intent to distribute dangerous drugs. Kant reserved the right to appeal the denial of his suppression motion, and the State agreed to dismiss the remaining charges. Kant was sentenced to 5 years to the Department of Corrections, all suspended, subject to a fine and other conditions.
¶10 Kant filed a timely appeal.
STANDARD OF REVIEW
¶11 The grant or denial of a motion to dismiss in a criminal proceeding is a question of law which we review de novo to determine whether the district court’s conclusion of law is correct. State v. Willis, 2008 MT 293, ¶ 11, 345 Mont. 402, 192 P.3d 691.
¶12 We review a district court’s ruling on a motion to suppress to determine whether the court’s findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. State v. Deshaw, 2012 MT 284, ¶ 13, 367 Mont. 218, 291 P.3d 561.
¶13 This Court’s function as a reviewing court is to ensure that the *242 magistrate or the lower court had a “substantial basis” to determine that probable cause existed. A magistrate’s determination that probable cause exists will be paid great deference and every reasonable inference possible will be drawn to support that determination. State v. Rinehart, 262 Mont. 204, 211, 864 P.2d 1219, 1223 (1993) (internal citations omitted); State v. Reesman, 2000 MT 243, ¶ 19, 301 Mont. 408, 10 P.3d 83 (overruled in part on other grounds by State v. Barnaby, 2006 MT 203, ¶ 42, 333 Mont. 220, 143 P.3d 809 (Cotter, Nelson, JJ., dissenting)).
DISCUSSION
¶14 Did the District Court err in denying Kant’s combined motion to suppress and dismiss?
¶15 Kant presents several arguments on appeal. He argues that the District Court (1) misconstrued and misapplied State v. Reesman and State v. Barnaby, (2) erroneously ruled on the issue of staleness of certain evidence; (3) incorrectly accorded the magistrate too much inferential latitude; and (4) erroneously denied his motions to suppress and dismiss.
¶16 In Reesman, we addressed the sufficiency of the application for a search warrant employing the “totality of the circumstances” standard set forth in Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317 (1983). We reviewed years of case law following the adoption of the Gates standard and observed that “certain indelible threshold rules have emerged.” Reesman, ¶ 27. Relying on these rules, we compiled a three-prong test to determine whether probable cause exists for the issuance of a search warrant:
(1) Was the informant anonymous or was the information provided hearsay? If so, independent corroboration of the information is required;
(2) If the informant is not anonymous, was the information provided based upon personal observation of criminal activity or was the information hearsay? If hearsay, independent corroboration is required; and
(3) If the information from a non-anonymous informant was gathered by personal observation of criminal activity, is the informant reliable?
Reesman, ¶¶ 28-31. We further explained that under this standard, the court reviewing an application for a warrant “evaluates the facts asserted within the four corners of the application and makes a practical, common-sense decision as to whether there is a fair *243 probability that incriminating items will be found in the place to which entry is sought.” Reesman, ¶ 24.
¶17 In Barnaby, the Court “deviate[d] slightly” from Reesman’s “strict rules requiring independent police corroboration” when it determined that the “critical question when evaluating probable cause is not whether an individual report meets the requirements of a particular test, but whether the application as a whole states sufficient facts to support a determination of probable cause.” Barnaby, ¶¶ 39-41. Kant argues that Barnaby wrongly relaxed the Reesman test.
¶18 Kant asserts that the District Court erroneously implied that Barnaby overruled Reesman. However, the Barnaby Court specifically admonished “police officers to corroborate independently information from sources of questionable reliability.” Barnaby, ¶ 42. Kant claims that the only information contained in the warrant application actually corroborated by Barnes was Crystal’s cellphone number and Jefferies’ and Harrison’s address and vehicle information. In other words, he complains that the District Court’s application of Barnaby resulted in the court’s failure to properly analyze the warrant application contents under Reesman.
¶19 Additionally, Kant challenges the District Court’s acceptance of or reliance on stale information contained in the warrant application, i.e., the Livingston police officer’s comment that summer temperatures caused the smell of marijuana to be detectable near Kant’s hpme, and a statement by an arrestee in June 2012 that he had gotten his marijuana plants from Kant. Kant contends that this stale information was insufficient to corroborate other information contained in the application and should have been disregarded.
¶20 Kant also argues that the magistrate erroneously inferred the existence of certain facts from the application for the search warrant, when the application itself did not categorically assert these facts. Specifically, he maintains that the magistrate inferred from the application that: (1) the CS had “first-hand” knowledge of the Kants’ criminal activity based on personal observation; (2) it was Barnes himself who observed a single occupant exiting Kant’s truck at Jefferies’ house; and (3) the marijuana being supplied to Harrison by Jefferies was marijuana grown and distributed by the Kants. He maintains that the magistrate was required to rely solely on the information contained within the four corners of the search warrant application and supporting documentation in determining whether probable cause exists, but that she instead engaged in unsupported inferences to justify the issuance of the search warrant.
¶21 We first address Kant’s complaint that a neighbor’s June 2012 *244 claim that he obtained marijuana plants from Kant, and Officer Leonard’s claims that during the hot summer months, the scent of fresh marijuana was evident near the Kants’ home, were too stale to be considered. As we are not basing our decision on either of these reports, we need not address them further.
¶22 Reviewing the remaining information included in the application, we analyze it under Reesman and Barnaby. In his affidavit, Barnes stated that the confidential source who provided information about Crystal, Jefferies, and Harrison was “known to law enforcement.” As such, the CS was not anonymous, as addressed in the first prong of the Reesman test. Under the second prong, we ask whether the CS’s information was based on his or her personal observation of the criminal activity or on hearsay. The affidavit provided little information about the CS. We do not know how the CS was “known to law enforcement,” whether the CS had provided reliable information previously, or how the CS discovered the information supplied to Barnes. Under prong two ofReesman, without this information, Barnes was required to independently corroborate the information provided.
¶23 While some of the language of the application is less than clear, reasonable and acceptable extrapolations may nonetheless be made. After receiving all of the CS’s information, Barnes independently, through personal surveillance or review of law enforcement records, corroborated what the CS had told him, including the phone number, addresses, and vehicle registration information for Crystal, Jefferies, and Harrison. We note that while Barnes did not expressly identify himself in his affidavit as the person who observed Kant’s car at Jefferies’ residence on the expected day and time, he did not identify anyone else as the surveillant, unlike the remainder of his application in which he specifically identified each source of the information obtained. Based upon Barnes’ statement that he conducted personal surveillance while corroborating the CS’s information, it is reasonable to conclude from a “practical and common-sense” review of the application that Barnes was the surveillant. His failure to affirmatively so state could have been an oversight or the result of poorly drafted language, but we conclude it is not fatal. Because we conclude that Barnes corroborated the CS’s information, we need not consider the remaining prongs of the Reesman test except to note that the CS’s admissions against interest further support a finding of CS reliability under the third prong of the test. For these reasons, we conclude that the application satisfies the Reesman test. Having determined that the warrant application satisfies the stricter Reesman test, we need not engage in further analysis under Barnaby.
*245 ¶24 As noted above, we are tasked with ensuring that the magistrate had a “substantial basis” to determine there was probable cause for the issuance of the warrant. We will pay the magistrate’s determination great deference and every reasonable inference will be drawn to support that determination. Rinehart, 262 Mont. at 211, 864 P.2d at 1223. Moreover, probable cause does not require facts sufficient to show criminal activity, but rather requires a determination that there exists a probability of criminal activity. Barnaby, ¶ 30. We conclude that the magistrate had a substantial basis for concluding there was a probability of criminal activity, and that the District Court did not err in denying Kant’s suppression motion.
CONCLUSION
¶25 For the foregoing reasons, we affirm the District Court’s denial of Kant’s motion to suppress and dismiss.
CHIEF JUSTICE McGRATH, JUSTICES WHEAT and BAKER concur.