FILED

12/06/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0575

DA 15-0575

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 318

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

DONALD L. THEELER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 13-022D
Honorable David M. Ortley, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Chad Wright, Chief Appellate Defender, Alexander H. Pyle, Assistant
Appellate Defender, Helena, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

        Edward J. Corrigan, Flathead County Attorney, John H. Donovan, Deputy
County Attorney, Kalispell, Montana

Submitted on Briefs:  October 5, 2016

Decided:  December 6, 2016

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Donald Theeler physically assaulted his girlfriend, causing her numerous injuries. He sought to dismiss his Partner or Family Member Assault (PFMA) charge on the ground that the statute under which he was charged violated his right to equal protection because it did not apply to persons in same-sex intimate relationships. The Eleventh Judicial District Court upheld the Justice Court's denial of his motion.

¶2    We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    In September 2012, Theeler was arrested after his girlfriend reported that he had "been beating on her all night." The State charged Theeler in Flathead County Justice Court with PFMA pursuant to § 45-5-206, MCA (2011). At that time, the statute defined "partners," in part, as "persons who have been or are currently in a dating or ongoing intimate relationship with a person of the opposite sex." Section 45-5-206(2)(b) (2011). In 2013, the Legislature struck "with a person of the opposite sex" from the definition of "partners." 2013 Mont. Laws 803, 804.[1]

¶4    Theeler filed a motion to dismiss the PFMA charge. He argued that § 45-5-206, MCA, violated his right to equal protection under the United States and Montana constitutions because the statute treated similarly-situated individuals unequally. The Justice Court denied the motion, reasoning that there was "not a difference in treatment under the law for equal protection purposes." The Justice Court found Theeler guilty.

---

[1] Unless otherwise noted, all subsequent citations to § 45-5-206, MCA, in this Opinion refer to the 2011 version of the statute.

2

He appealed to the District Court. The District Court concluded that the Justice Court correctly analyzed Theeler's equal protection claim and therefore affirmed its denial of Theeler's motion to dismiss. Theeler appeals.

## STANDARDS OF REVIEW

¶5 We review cases that originate in justice court and are appealed to district court as if the appeal originally had been filed in this Court. *State v. Kebble*, 2015 MT 195, ¶ 14, 380 Mont. 69, 353 P.3d 1175. Accordingly, we undertake an independent examination of the record apart from the district court's decision. *Kebble*, ¶ 14.

¶6 We review de novo a trial court's decision on a motion to dismiss. *State v. Kant*, 2016 MT 42, ¶ 11, 382 Mont. 239, 367 P.3d 726. Our review of constitutional questions is plenary. *State v. Covington*, 2012 MT 31, ¶ 13, 364 Mont. 118, 272 P.3d 43. We may uphold a judgment on any basis supported by the record, even if the lower court applied a different rationale. *Rooney v. City of Cut Bank*, 2012 MT 149, ¶ 25, 365 Mont. 375, 286 P.3d 241.

## DISCUSSION

¶7 *Whether Theeler was entitled to dismissal of the PFMA charge because the statute violated his constitutional right to equal protection.*

¶8 The Justice Court reasoned that § 45-5-206, MCA, did not violate Theeler's right to equal protection because the statute does not treat similarly-situated individuals unequally. The District Court affirmed the Justice Court's interpretation of the statute.

¶9 On appeal, Theeler asserts that § 45-5-206, MCA, "by its plain terms," discriminates between similarly-situated individuals in opposite-sex and same-sex

3

relationships. Such a discriminatory classification, Theeler contends, violates the equal protection clauses of the United States and Montana constitutions. Theeler argues that the statute fails even rational basis review because the classification—sexual orientation—is not rationally related to the statute's primary purposes—to protect victims of domestic violence and to punish abusers.

¶10 Theeler acknowledges that he was not in a same-sex relationship, but points out that the statute exposes him to greater punishment than a same-sex abuser would face if charged with simple assault. Theeler argues that the statute facially discriminates against similarly-situated classes without justification. He relies, in part, on our decisions in *Snetsinger v. Montana University System*, 2004 MT 390, 325 Mont. 148, 104 P.3d 445, and *Gryczan v. State*, 283 Mont. 433, 942 P.2d 112 (1997), and on the United States Supreme Court's decisions in *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472 (2003), *Obergefell v. Hodges*, ___ U.S. ___, 135 S. Ct. 2584 (2015), and *United States v. Windsor*, ___ U.S. ___, 133 S. Ct. 2675 (2013), to support his position. He also cites empirical evidence showing similar or higher incidence of domestic violence among same-sex partners as among heterosexual partners. Because the statute unconstitutionally violates his right to equal protection, Theeler argues that his conviction must be reversed.

¶11 For purposes of Theeler's appeal, and based upon the cited authorities, we accept his argument that the former version of § 45-5-206, MCA, under which he was charged violated equal protection by defining "partners" as "persons who have been or are

4

currently in a dating or ongoing intimate relationship with a person of the opposite sex." It does not necessarily follow, however, that Theeler's PFMA conviction cannot stand.

¶12    Whenever possible, we attempt to "construe statutes in a manner that avoids unconstitutional interpretation." *Williams v. Bd. of Cnty. Comm'rs*, 2013 MT 243, ¶ 64, 371 Mont. 356, 308 P.3d 88.   So, if a statute "contains both constitutional and unconstitutional provisions, we examine the legislation to determine if there is a severability clause." *Williams*, ¶ 64; *accord United States v. Jackson*, 390 U.S. 570, 585, 88 S. Ct. 1209, 1218 (1968) (applying severability in a criminal case and concluding that the "unconstitutionality of a part of an Act does not necessarily defeat . . . the validity of its remaining provisions") (citation and internal quotations omitted).   "The inclusion of a severability clause in a statute is an indication that the drafters desired a policy of judicial severability to apply to the enactment." *Williams*, ¶ 64.   If a statute does not contain a severability clause, we still may sever an unconstitutional provision. *Williams*, ¶ 64.   In doing so, we "must determine whether the unconstitutional provisions are necessary for the integrity of the law or were an inducement for its enactment." *Williams*, ¶ 64 (citation and internal quotations omitted).   In order to sever an unconstitutional provision, "the remainder of the statute must be complete in itself and capable of being executed in accordance with the apparent legislative intent." *Williams*, ¶ 64.   That is, if severing "the offending provisions will not frustrate the purpose or disrupt the integrity of the law, we will strike only those provisions of the statute that are unconstitutional." *Williams*, ¶ 64. We have long held that "[i]f an invalid part of a statute is severable from the rest, the

5

portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected." *Sheehy v. Public Employees Retirement Div.*, 262 Mont. 129, 141, 864 P.2d 762, 770 (1993); *Mont. Auto. Ass'n v. Greely*, 193 Mont. 378, 399, 632 P.2d 300, 311 (1981).

¶13 Here, the statute as originally enacted contained a severability clause. 1985 Mont. Laws 1575, 1577. A 1995 bill that partially amended the statute's definition of "partners" also included a severability clause. 1995 Mont. Laws 1108, 1128. These severability clauses indicate that the Legislature "desired a policy of judicial severability to apply to the enactment" of § 45-5-206, MCA. *Williams*, ¶ 64.

¶14 With or without severability clauses in each amendment since the statute's enactment, we conclude that the unconstitutional provision is unnecessary "for the integrity of the law." *Williams*, ¶ 64. It is undisputed that the purpose of § 45-5-206, MCA, is to protect victims of domestic violence and to punish and rehabilitate abusers. Severing the phrase "with a person of the opposite sex" from § 45-5-206(2)(b), MCA—as the Legislature did in 2013—"will not frustrate the purpose or disrupt the integrity of the law." *Williams*, ¶ 64. Further, severing the unconstitutional provision so as to construe the statute "in a manner that avoids unconstitutional interpretation" leaves the "remainder of the statute . . . complete in itself and capable of being executed in accordance with the apparent legislative intent." *Williams*, ¶ 64. The statute still would protect victims of domestic violence and provide for the punishment and rehabilitation of abusers.

6

¶15    We reject Theeler's claims to the contrary.  We are not persuaded by his argument that severing the offending provision violates his right to due process.  As a heterosexual male, Theeler received every constitutional protection he was due when prosecuted for physically assaulting his female partner.  We conclude that Theeler was not entitled to dismissal of his PFMA charge.  Accordingly, even though we do so applying a different rationale, we conclude that the Justice Court and the District Court correctly denied Theeler's motion to dismiss.

## CONCLUSION

¶16    We affirm Theeler's PFMA conviction.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ JIM RICE

Justice Laurie McKinnon, specially concurring.

¶17    I write separately to adequately address the remedy of severability which we apply following our determination that § 45-5-206, MCA, violated equal protection guarantees by defining "partner" in a manner that excluded same-sex partners.  The problem is one of underinclusiveness of the statute; that is, it criminalizes only heterosexual conduct and

7

does not include as criminal those assaults occurring between same-sex partners. When a statute is constitutionally defective because of underinclusion, a court may either strike the statute, and thus make it applicable to nobody, or extend the statute's coverage to those excluded. Thus, the unconstitutionality of one part of the statute does not necessarily render the entire statute void.

¶18 This Court must discern what course the Legislature would have followed had it foreseen our determination as to underinclusiveness of the statute. Nearly fifty years ago, Judge Cardozo stated, "[t]he question is in every case whether the Legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether." *People v. Mancuso*, 175 N.E. 177, 181 (N.Y. 1931). "Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *United States v. Jackson*, 390 U.S. 570, 585, 88 S. Ct. 1209, 1218 (1968). More recently, in the landmark severability case of *Ayotte v. Planned Parenthood*, 546 U.S. 320, 126 S. Ct. 961 (2006), the Court declared the following principles:

> Three interrelated principles inform our approach to remedies. First, we try not to nullify more of a legislature's work than is necessary[.] . . .
>
> Second, mindful that our constitutional mandate and institutional competence are limited, we restrain ourselves from 'rewriting state law to conform it to constitutional requirements' even as we strive to salvage it. . . .
>
> Third, the touchstone for any decision about remedy is legislative intent, for a court cannot 'use its remedial powers to circumvent the intent of the legislature.'

8

*Ayotte*, 546 U.S. at 329-30, 126 S. Ct. at 967-68 (citations omitted).

¶19 Montana similarly has followed these principles of severability. If an invalid part of a statute is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected. *State v. Fire Department Relief Association, Etc.*, 138 Mont. 172, 178, 355 P.2d 670, 673 (1960). A statute "is not destroyed in toto because of an improper provision, unless such provision is necessary to the integrity of the statute or was the inducement to its enactment." *Hill v. Rae*, 52 Mont. 378, 389-90, 158 P. 826, 831 (1916). If, when an unconstitutional portion of an act is eliminated, the remainder is complete in itself and capable of being executed in accordance with the apparent legislative intent, it must be sustained. *Gullickson v. Mitchell*, 113 Mont. 359, 375, 126 P.2d 1106, 1114 (1942).

¶20 Theeler argues the remedy he should receive for having been convicted pursuant to a constitutionally defective statute is reversal. The Court fails to address this argument and Theeler's contention that, because other same-sex partners have escaped prosecution prior to 2013, Theeler should likewise escape accountability. Principles of severance, however, do not require that a statutory provision constitutionally defective for underinclusiveness be declared invalid as to those legitimately included within the class on the basis that others have escaped accountability. Principles of severance still apply where elimination of an invalid exemption will nonetheless impose burdens on those not formerly burdened by the statute. *Orr v. Orr*, 440 U.S. 268, 271-72, 99 S. Ct.1102,

9

1107-08 (1979). Further, severability principles apply although the exemption is part of a criminal statute and the equal protection analysis occurs within the context of a criminal trial where the defendant is cloaked with numerous constitutional and statutory protections. *Skinner v. Oklahoma*, 316 U.S. 535, 543, 62 S. Ct. 1110, 1114 (1942).

¶21 The question, then, is whether the Legislature would prefer to have statutes which cover all partners in partner family member assaults, with no exemption for same-sex couples, or instead to have no statutes at all proscribing partner family member assaults which involve persons in an intimate relationship, regardless of sexual orientation. In all cases where the court must decide whether to sever an exemption or instead declare an entire statute or definition a nullity, the court must look to the importance of the statute and the significance of the exemption within the overall statutory scheme. Statutes prohibiting partner family member assaults are of utmost importance to public safety. To nullify, in its entirety, that portion of the statute offering protection to "persons who have been or are currently in a dating or ongoing intimate relationship" would have a disastrous effect on public safety and the protection of victims of domestic violence. Although the Legislature struggled prior to 2013 with the very phrase the Court has found unconstitutional, the inevitable conclusion that I would reach is that the Legislature would prefer to eliminate "of the opposite sex" rather than nullify that portion of the statute offering protection to partners in intimate relationships. By expanding the definition of "partners" to all persons in intimate relationships, the Legislature's concerns for public safety and protection of victims of domestic violence are preserved.

10

¶22 Pursuant to this analysis, a court does not "create a crime," but does, however, *enlarge the scope* of the partner family member statute which was constitutionally defective for its underinclusiveness. Accordingly, by choosing a remedy which expands the definition of "partner," Theeler cannot claim that he was convicted pursuant to a constitutionally defective provision because the statute under which he is being convicted has not been struck down. By eliminating an unconstitutional exception to a criminal statute we have expanded and enlarged the scope of the statute. We have not rendered the valid provision pursuant to which Theeler was convicted unenforceable.

¶23 Moreover, the due process clause of the Fourteenth Amendment requires that an accused have had fair warning at the time of committing an offense that such conduct was made criminal by the State. Theeler's conduct was covered by the statute and he received fair warning that it was criminal. The remedy chosen by the Court to extend coverage of "partner" to all those to whom the provision can constitutionally be applied, does not deprive Theeler of a constitutionally protected right to equal protection or due process. To reverse Theeler's conviction would mean that all those persons who were convicted of partner family member assault would be entitled to have their conviction vacated and that a conviction could additionally not be considered as a predicate offense for an enhanced penalty. The equal protection clause and due process do not require that we reach such as result.

¶24 Therefore, pursuant to the foregoing analysis, the remedy for the underinclusiveness of the statute is to expand coverage to those formerly excluded by

11

striking that portion of the statute which defines "partners" as "those of the opposite sex." Because the portion of the statute under which Theeler has been convicted has not been struck down, his conviction should be affirmed.

/S/ LAURIE McKINNON