FILED

09/13/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0629

DA 21-0629

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 176

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

JOSHUA AARON BROWN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 18-1522
Honorable Ashley Harada, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              D. Michael Eakin, Daniel L. Minnis, Eakin & Berry, PLLC, Billings, Montana

       For Appellee:

              Austin Knudsen, Montana Attorney General, Bree Gee, Assistant Attorney General, Helena, Montana

              Scott D. Twito, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs:  July 20, 2022

Decided:  September 13, 2022

Filed:

                               Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      A Yellowstone County jury convicted Joshua Brown of Sexual Abuse of Children for sending text messages to his stepdaughter that encouraged her to engage in sexual conduct if he agreed to pay her cellular phone bill.  Brown appeals his conviction, raising the following restated issues:

1. *Whether the District Court should have instructed the jury that a violation of Privacy in Communications is a lesser-included offense of Sexual Abuse of Children.*

2. *Whether the State demonstrated probable cause for the charges and presented sufficient evidence to convict Brown as charged.*

3. *Whether the District Court should have found the Sexual Abuse of Children statute unconstitutional for vagueness or its mandatory minimum sentence to be cruel and unusual.*

4. *Whether the District Court failed to follow the statutory procedures for determining whether an exception to the mandatory minimum sentence applied under §§ 46-18-222(3) and -223(3), MCA.*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      On August 22, 2018, Brown engaged his twelve-year-old stepdaughter L.H. in a text message conversation.  Brown and L.H.'s mother Carly, who were separated but not divorced at the time, had previously discussed Brown paying for L.H.'s cell phone bill for one year, and L.H. was aware of this possibility.  Brown's initial text messages to L.H. appeared to pertain to L.H.'s cell phone bill; his messages, however, became increasingly predatory:

[Brown:] If you are my really good girl I will give you just about anything you want …

[L.H.:] I just want money[]

[Brown:] You are amazing .. I want to give you like 1000$

[L.H.:] I wish lol[1]

[Brown:] No for real … What will you do for me?

[L.H.:] Idk[2]

. . .

[Brown:] What could you do? Something that would please me a lot, or something major ..

[L.H.:] Idk

. . .

[Brown:] I will say an idea . You promise I can trust you … ?

[L.H.:] Sure

[Brown:] yes I can trust you?  Don't say a word to anyone ever . Not one friend , no one but me and you right?

[L.H.:] What

[L.H.:] Ok

[Brown:] What we are talking about . No one can ever know … right ?

[L.H.:] K

[L.H.:] Ya

---

[1] L.H. testified that "lol" means "laugh out loud."

[2] L.H. testified that "Idk" means "I don't know."

[Brown:] You promise

[L.H.:] Yes

[Brown:] Nice I like you

[Brown:] Makes me want to come get you now and give you money … lol

[L.H.:] No

[Brown:] Jk[3]

[L.H.:] Josh do you like me or something because your acting weird and I'm 13[][4]

.   .   .

[Brown:] Well I asked you if you could be a little bit naughty and you said yes[]

[Brown:] If it . . .

[L.H.:] No I said idk

.   .   .

[Brown:] Is there anything you're kinda curious about or you would want to do for me ?

[L.H.:] No

.   .   .

[Brown:] So I'm going to tell you my idea OK if it weirds you out you can tell me and I won't say anything like that again

[L.H.:] K but I'm not doing anything with you that's gross and your way older than me

---

[3] L.H. testified that "Jk" means "just kidding."

[4] L.H. was a week shy of her 13th birthday at the time of the offense.

[L.H.:] Plus your my moms husband so

. . .

[Brown:] Can I say ..?

[L.H.:] Yes

[L.H.:] K talk to you tmrw text me when you get the money

[Brown:] I was thinking you would look really amazing in a thong or really cool panties .. or nude of course .. and I know you're young BTW. But you are still beautiful . but it would be amazing to see you dancing or just laying on Your bed on your stomach and you just leave the door open a crack so I could see you?

[Brown:] Or leave the door unlocked and have a bunch of soap in your hair and eyes and I peaked [sic] in the shower on you? Never touch you at all …

[Brown:] Uggh is that really bad ? Prob shouldn't have said that

[L.H.:] That's gross josh

[Brown:] Was just a thought ... lol I know sorry

[L.H.:] Don't talk to me again thanks

In the text messages that followed, Brown attempted to justify his behavior, first by telling L.H. he was "mostly joking" and just paying her a compliment. He then asked L.H. not to tell anyone, instructed her to erase the text messages, and said that the entire text message exchange was Carly's idea. After L.H. threatened to report him, he changed his story and said that the voice-text application on his cell phone transcribed the text messages incorrectly.

¶3      Carly reported the incident to the police, and the State charged Brown with Sexual Abuse of Children and attempted Sexual Abuse of Children, under §§ 45-5-625(1)(c) and

5

45-4-103, MCA. Brown moved to dismiss the charge on the grounds that the State lacked probable cause and that the Sexual Abuse of Children statute is unconstitutional, both facially and as applied to him. The District Court denied his motion. A Yellowstone County jury found Brown guilty of the offense, and the District Court sentenced him to 100 years with 90 years suspended, in accordance with the mandatory minimum sentence in § 45-5-625(4)(a)(i), MCA (2017).[5]

## STANDARDS OF REVIEW

¶4 Because different standards of review apply to each issue Brown raises, we explain them in the discussion of his respective claims.

## DISCUSSION

¶5 *1. Whether the District Court should have instructed the jury that a violation of Privacy in Communications is a lesser-included offense of Sexual Abuse of Children.*

¶6 Brown submitted a proposed jury instruction on the offense of "violation of a person's privacy in communications" as a lesser-included offense of "sexual abuse of children." He filed a point brief in support of the instruction, which the State opposed. The District Court heard argument from the parties at trial and denied Brown's proposed jury instruction, stating that the elements of the two offenses are "completely different."

¶7 "We review a district court's refusal to give a jury instruction on a lesser-included offense for an abuse of discretion." *State v. Freiburg*, 2018 MT 145, ¶ 10, 391 Mont. 502,

---

[5] In 2019, the Legislature amended § 45-5-625(4)(a)(i), MCA, to raise the length of the minimum active portion of the sentence from 10 years to 25 years. An Act Revising the Mandatory Minimum Sentences for Certain Sexual Offenses when the Victim is 12 Years of Age or Younger, S. 155, Mont. 66th Reg. Sess. § 3 (2019).

6

419 P.3d 1234 (citations omitted). "Reversible error will occur only if the jury instructions prejudicially affect the defendant's substantial rights." *Freiburg*, ¶ 10 (citations omitted).

¶8    "A lesser included offense instruction must be given when there is a proper request by one of the parties and the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense." Section 46-16-607(2), MCA. "[A] trial court must give a proposed lesser-included offense instruction when two factors are met: (1) as a matter of law, the offense for which the instruction is requested is a lesser-included offense of the offense charged; and (2) the proposed lesser-included offense instruction is supported by the evidence in the case." *Freiburg*, ¶ 13 (citations omitted); *see also State v. Denny*, 2021 MT 104, ¶ 27, 404 Mont. 116, 485 P.3d 1227. An "included offense" is an offense that:

> (a) is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

> (b) consists of an attempt to commit the offense charged or to commit an offense otherwise included in the offense charged; or

> (c) differs from the offense charged only in the respect that a less serious injury or risk to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.

Section 46-1-202(9), MCA.

¶9    Under § 46-1-202(9)(a), MCA, "the term 'facts' refers to the statutory elements of the offenses, not the individual facts of the cases." *State v. Fuqua*, 2000 MT 273, ¶ 22, 302 Mont. 99, 13 P.3d 34. We use the test announced in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180 (1932), to determine whether an offense is a lesser-included one under subsection (a). *State v. Castle*, 285 Mont. 363, 368, 948 P.2d 688, 691 (1997).

7

"In other words, a lesser-included offense is one that is established by proof of the same or less than all the elements required to establish the commission of the offense charged." *Denny*, ¶ 29. If not, neither offense is "included" in the other. *See State v. Fehringer,* 2013 MT 10, ¶ 34, 368 Mont. 226, 293 P.3d 853 (holding that disorderly conduct is not a lesser included offense of partner or family member assault); *State v. Weatherell*, 2010 MT 37, ¶ 13, 355 Mont. 230, 225 P.3d 1256 (holding that sexual assault is not an included offense of partner or family member assault).

¶10 Brown argues that he was entitled to a jury instruction on the Privacy in Communications statute, § 45-8-213(1)(a), MCA, as a lesser-included offense of Sexual Abuse of Children, § 45-5-625(1)(c), MCA. He contends that, under the *Blockburger* test, a violation of the Privacy in Communications statute is an "included offense" of Sexual Abuse of Children pursuant to § 46-1-202(9)(a), MCA. Brown does not argue that either of the other subsections of § 46-1-202(9), MCA, applies.

¶11 A violation of Privacy in Communications, under § 45-8-213(1)(a), MCA, requires proof that a person:

(1) knowingly

(2) with the purpose to terrify, intimidate, threaten, harass, or injure

(3) communicates with a person by electronic communication and

(4) makes repeated lewd or lascivious suggestions.[6]

---

[6] The elements of the offense have been simplified and tailored to Brown's conduct in this case.

¶12 Sexual Abuse of Children, as provided for in § 45-5-625(1)(c), MCA, requires proof that a person:

(1) knowingly

(2) by any means of communication, including electronic

(3) encourages a child under 16 years of age to engage in sexual conduct, actual or simulated.[7]

The statute defines "sexual conduct" disjunctively, listing a number of alternatives that meet the definition, including, as pertinent here, the "lewd exhibition of the genitals, breasts, pubic or rectal area, or other intimate parts of any person." Section 45-5-625(5)(b)(i)(F), MCA.

¶13 Comparing the offenses, each requires an element of proof the other does not: a violation of the Privacy in Communications statute requires a "purpose to terrify, intimidate, harass, or injure," which need not be shown for a conviction of Sexual Abuse of Children. As charged, Sexual Abuse of Children requires proof that a person "encourage[d] a child under 16 years old to engage in" a "lewd exhibition of the genitals, breasts, pubic or rectal area, or other intimate parts of any person"; Privacy in Communications says nothing about minors or exhibition of intimate body parts. Sections 45-5-625(1)(c), (5)(b)(i)(F), 45-8-213(1)(a), MCA.

¶14 Brown asserts that a jury could have convicted him of violating the Privacy in Communications statute because his text messages more properly could be characterized

---

[7] The elements of the offense have been reduced to the specific conduct with which Brown was charged.

as "lascivious suggestions." He makes a series of unsupported and—considering the nature of his conviction, inappropriate—assertions, such as, "pictures in Playboy can be lascivious while pictures in Hustler are lewd." He ignores, however, the remaining elements of the offenses and offers no real legal analysis of the *Blockburger* test. A lewd or lascivious suggestion made with the "purpose to terrify, intimidate, threaten, harass, or injure" is not encompassed within the knowing conduct of urging a child to engage in sexual exhibition.

¶15　Brown argues that a jury "could want to convict" him of some crime "rather than totally acquit" and may have chosen a lesser offense if given the opportunity. *See Castle*, 285 Mont. at 367, 948 P.2d at 690 (noting that giving a lesser-included offense instruction "avoids the situation where the jury, convinced that the defendant is guilty of some crime, although not necessarily the crime charged, convicts the defendant rather than let his action go unpunished simply because the only alternative was acquittal."). "Where the facts of a case support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion." *State v. Cameron*, 2005 MT 32, ¶ 17, 326 Mont. 51, 106 P.3d 1189 (quoting *Fuqua*, ¶ 13). Even when a defendant's conduct could meet the elements of more than one crime, he is not entitled to an instruction on an offense the State did not charge unless it is a lesser-included offense. Brown cannot establish that a violation of Privacy in Communications "is established by proof of the same or less than all the facts required to establish" Sexual Abuse of Children. Section 46-1-202(9)(a), MCA. Because this is a threshold requirement under § 46-16-607(2), MCA, Brown was not entitled to a jury instruction on the Privacy in Communications statute.

10

¶16 Brown's remaining arguments on this issue are more properly characterized as a challenge to the sufficiency of the evidence, which we address fully below. The District Court did not abuse its discretion when it refused to give Brown's proposed jury instruction.

¶17 *2. Whether the State demonstrated probable cause for the charges and presented sufficient evidence to convict Brown as charged.*

¶18 Brown contends that the District Court "[should] have dismissed the action for failure to allege or prove facts constituting an offense." In the District Court, he argued that the State lacked probable cause to file the Information. On appeal, however, the substance of his argument seems to challenge the sufficiency of the evidence. Because Brown's brief mixes these two issues, we address both contentions here.

¶19 "When parties raise the issue of the sufficiency of the evidence to establish probable cause, the issue is whether the alleged facts satisfy the statutory elements of the crime charged; that is, whether there is probable cause that the accused had committed the offense . . . ." *State v. Griffin*, 2021 MT 190, ¶ 11, 405 Mont. 78, 491 P.3d 1288. An application for leave to file an information by affidavit against a criminal defendant must be granted "[i]f it appears that there is probable cause to believe that an offense has been committed by the defendant." Section 46-11-201(2), MCA. An affidavit in support of the application "need not make out a prima facie case that a defendant committed an offense[; a] mere probability . . . is sufficient." *State v. Elliott*, 2002 MT 26, ¶ 26, 308 Mont. 227, 43 P.3d 279. We pay "great deference" to a court's determination that probable cause exists

and draw "every reasonable inference possible . . . to support that determination." *State v. Kant*, 2016 MT 42, ¶ 13, 382 Mont. 239, 367 P.3d 726 (citations omitted).

¶20 The State charged Brown with Sexual Abuse of Children for sending text messages to L.H., his 12-year-old stepdaughter, encouraging her to engage in sexual conduct. The State's motion for leave to file an information against Brown stated that Billings Police Officer Lausch took photographs of L.H.'s cell phone displaying the text messages Brown sent to her. The affidavit copied many of the text messages, verbatim, including the text messages in which Brown offered to give L.H. $1,000 and suggested that L.H. pose nude with the door cracked open. These facts are sufficient to establish the required showing of probability that Brown committed the offense of Sexual Abuse of Children. The District Court did not err in denying Brown's motion to dismiss for lack of probable cause.

¶21 Brown raises similar arguments to challenge the sufficiency of the evidence. He argues that, although he sent "inappropriate" text messages, he did not encourage L.H. to engage in a lewd exhibition of intimate parts of her body.

¶22 "We review claims of insufficient evidence de novo." *State v. Burnett*, 2022 MT 10, ¶ 15, 407 Mont. 189, 502 P.3d 703 (citation omitted). "[W]e view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Burnett*, ¶ 15 (citation omitted). "It is the factfinder's role to evaluate the credibility of witnesses, weigh the evidence, and ultimately determine which version of events should prevail." *Burnett*, ¶ 15 (citation omitted).

¶23 The State needed to prove beyond a reasonable doubt that Brown "knowingly, by any means of communication . . . encourage[d] . . . a child under 16 years of age to engage in sexual conduct." *See* § 45-5-625(1)(c), MCA. The jury was provided the following statutory definition of "sexual conduct": "lewd exhibition of the genitals, breasts, pubic or rectal area, or other intimate parts of any person." *See* § 45-5-625(5)(b)(i)(F), MCA. The jury was provided the following definition of "knowingly": "A person acts knowingly when the person is aware there exists the high probability that the person's conduct will cause a specific result." Brown does not contest the instructions on appeal.

¶24 The State presented evidence of Brown's and L.H.'s text messages through L.H.'s testimony at trial, and the jury witnessed the entire relevant text message exchange. This exchange showed that Brown offered to give L.H. "anything" she wanted, including $1,000, if she "please[d]" him "a lot" or "did something major for [him]." Knowledge may be inferred from the acts of the accused and the circumstances of the offense. *State v. Krum*, 238 Mont. 359, 361, 777 P.2d 889, 890-91 (1989). Brown's text messages plainly demonstrate that Brown understood the nature of his actions because he repeatedly made L.H. promise not to tell anyone about his advances. The text messages also show that Brown persistently led the conversation, despite L.H.'s noncommittal and dismissive responses, like "Idk" when he asked what she would do for him, "No" when he asked if she was "curious about anything," and telling him he was "being weird" and she was "13." Finally, L.H. explicitly told Brown that she was "not doing anything with [him]" because "that's gross," because he is "way older than [her]," and because he was her mom's husband. Despite those responses, Brown sent L.H. the following text messages:

13

I was thinking you would look really amazing in a thong or really cool panties .. or nude of course .. and I know you're young BTW. But you are still beautiful . but it would be amazing to see you dancing or just laying on Your bed on your stomach and you just leave the door open a crack so I could see you?

Or leave the door unlocked and have a bunch of soap in your hair and eyes and I peaked in the shower on you? Never touch you at all … [sic]

Brown again demonstrated that he understood he did something wrong when he replied to his own text message: "Uggh is that really bad ? Prob shouldn't have said that."

¶25 L.H.'s and Carly's testimonies and the text messages established that L.H. was a child under the age of 16 at the time of the offense. A rational trier of fact reasonably could have inferred, beyond a reasonable doubt, that Brown was aware of a high probability that his text messages would encourage L.H. to engage in sexual conduct because it is clear from the context that Brown was attempting to exchange the payment of L.H.'s cell phone charges for her performing acts that were sexual in nature. A rational trier of fact similarly could have found beyond a reasonable doubt that Brown encouraged L.H. to engage in the lewd display of intimate parts of her body because Brown stated that he wanted to see L.H. "in a thong," in "really cool panties," or "nude of course." Finally, the text messages easily permitted a rational trier of fact to find, beyond a reasonable doubt, that Brown encouraged a "lewd exhibition" because he explicitly asked L.H. to "leave the door open a crack so [he] could see [her]."

¶26 Brown argues that he did not encourage L.H. to engage in sexual conduct because he "did not mention genitals, breasts, pubic or rectal areas or other intimate parts of the body." Though the text messages did not contain those explicit words, Brown's

14

encouraging L.H. to pose nude or nearly nude is the same as encouraging her to exhibit her "intimate parts." A rational trier of fact could have found that what Brown suggested to L.H. constituted "sexual conduct" under the statutory definition. *See* § 45-5-625(5)(b)(i)(F), MCA.

¶27 Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could determine, beyond a reasonable doubt, that Brown knowingly, by any means of communication, encouraged L.H., a child under 16 years of age at the time, to engage in the lewd exhibition of her "genitals, breasts, pubic or rectal area, or other intimate parts." There was sufficient evidence to support Brown's conviction.

¶28 *3. Whether the District Court should have found the Sexual Abuse of Children statute void for vagueness or its mandatory minimum sentence to be cruel and unusual.*

¶29 We review a district court's denial of a motion to dismiss a criminal case de novo. *State v. Knudsen*, 2007 MT 324, ¶ 11, 340 Mont. 167, 174 P.3d 469. "We review a district court's conclusions of law for correctness." *Knudsen*, ¶ 11 (citation omitted). "A statute is presumed constitutional unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt." *State v. Christensen*, 2020 MT 237, ¶ 13, 401 Mont. 247, 472 P.3d 622 (citation omitted). "Our review of constitutional questions is plenary." *Knudsen*, ¶ 12 (citation omitted).

¶30 Before the District Court, Brown alleged that the Sexual Abuse of Children statute, § 45-5-625(1)(c), MCA, is unconstitutional, both facially and as applied, because the term "encourage" is vague and therefore the statute is void for vagueness. On appeal, Brown raises only an as-applied vagueness challenge. He abandons his initial theory that the term

15

"encourage" is vague and instead contends that two other terms, the definitions of "lewd" and "exhibition" in § 45-5-625(5)(b)(i)(F), MCA, and the age requirement for the mandatory minimum sentence in § 45-5-625(4)(a), MCA, are unconstitutionally vague. As the State correctly points out, this is a complete change in legal theory. We generally will not review constitutional issues, including void-for-vagueness challenges, raised for the first time on appeal. *See State v. Nelson*, 2014 MT 135, ¶ 25 n.3, 375 Mont. 164, 334 P.3d 345; *State v. Mainwaring*, 2007 MT 14, ¶ 20, 335 Mont. 322, 151 P.3d 53. We permit parties to bolster their preserved issues "or make further arguments within the scope of the legal theory articulated to the trial court," but we will not review "an entirely new legal theory." *State v. Norman*, 2010 MT 253, ¶ 24, 358 Mont. 252, 244 P.3d 737. We decline to consider Brown's unpreserved vagueness challenge.

¶31     Brown also argues for the first time on appeal that the 100-year mandatory minimum sentence in § 45-5-625(4)(a)(i), MCA,[8] violates the Eighth Amendment to the United States Constitution and Article II, Section 22, of the Montana Constitution, both facially and as applied, because it imposes a cruel and unusual punishment. The State argues that Brown waived this argument because it represents a change of legal theory. The State is correct that Brown did not make this argument in the trial court. But "our jurisprudence has long permitted a defendant to challenge a sentence on the basis of illegality, even when no objection was made at the time of sentencing." *State v. Ellis*, 2007 MT 210, ¶ 7,

---

[8] Though the District Court sentenced Brown under the 2017 version of the statute, the Legislature did not alter the 100-year mandatory minimum when it amended the statute in 2019. *See* § 45-5-625(4)(a)(i), MCA.

339 Mont. 14, 167 P.3d 896 (citation omitted). "A claim that a statute authorizing a sentence is unconstitutional on its face may be raised for the first time on appeal, but the exception does not apply to as-applied constitutional challenges." *State v. Coleman*, 2018 MT 290, ¶ 8, 393 Mont. 375, 431 P.3d 26 (cleaned up) (quoting *State v. Parkhill*, 2018 MT 69, ¶ 16, 391 Mont. 114, 414 P.3d 1244).

¶32    Section 45-5-625(4)(a)(i), MCA, provides: "If the victim was 12 years of age or younger and the offender was 18 years of age or older at the time of the offense, the offender . . . shall be punished by imprisonment in a state prison for a term of 100 years." Brown asserts that a 100-year prison sentence, even with 90 years suspended, is not proportional to the act of sending "merely an inappropriate text message." Brown tailors his Eighth Amendment challenge to the facts of his case, arguing that "[a]n inappropriate text message about wearing 'cool panties' requires the same 100-year sentence as someone raping a child [or] of making and selling child pornography videos." Brown was convicted of Sexual Abuse of Children because the jury found that he knowingly encouraged L.H. to engage in sexual conduct, not because he sent "merely an inappropriate text message." Brown fails to articulate or support an argument that the mandatory sentence facially violates the constitutional prohibition against cruel and unusual punishments. Because his argument raises an as-applied challenge, we decline to consider it for the first time on appeal.

17

¶33    *4. Whether the District Court failed to follow the statutory procedures for determining whether an exception to the mandatory minimum applied under §§ 46-18-222(3) and -223(3), MCA.*

¶34    "We review de novo a District Court's interpretation of statute . . . ." *Christensen*, ¶ 13 (citation omitted).

¶35    "Mandatory minimum sentences prescribed by the laws of [Montana] . . . do not apply if . . . the offender, at the time of the commission of the offense for which the offender is to be sentenced, was acting under unusual and substantial duress, although not such duress as would constitute a defense to the prosecution."  Section 46-18-222(3), MCA. "When the application of an exception . . . is an issue, the court shall grant the defendant a hearing prior to the imposition of sentence to determine the applicability of the exception." Section 46-18-223(1), MCA.  If it appears by a preponderance of the information submitted during trial, the sentencing hearing, and the presentence report that an exception does not apply, "the court shall impose the appropriate mandatory sentence."  Section 46-18-223(3), MCA.  In a statement that must be "included in the judgment," "[t]he court shall state the reasons for its decision in writing and shall include an identification of the facts relied upon in making its determination."  Section 46-18-223(3), MCA.

¶36    Brown alleges that the District Court failed to hold a separate hearing to determine whether he was under duress at the time of the commission of the offense, even though he requested a hearing in a presentencing motion.  He claims also that the court did not state the reasons for denying the exception in its Judgment.  The record plainly contradicts Brown's assertions.

18

¶37 The District Court held a sentencing hearing, at which time it considered at length whether Brown was entitled to an exception to the mandatory minimum sentence on the basis of duress. Dr. Donna Veraldi testified at the sentencing hearing that she conducted an interview with Brown and summarized her findings in a report. She said that, according to Brown, he was subject to "things that were emotionally abusive to him," and she opined that "this set the basis for his experiencing duress at [the time of the offense]." But Dr. Veraldi did not diagnose Brown with any disorder in the Diagnostic and Statistical Manual of Mental Disorders. The court also heard arguments from the State and from Brown regarding the "duress" exception. The District Court did not find Dr. Veraldi's opinion helpful, as it recognized that she based her opinion on limited information and that her report was contingent on Brown's truthfulness with the interview.

¶38 In its Judgment, the court stated that it "was unable to make a finding" that Brown was "experiencing unusual and substantial duress at the time he committed the crime for which he was convicted." The court described in great detail the reasons for imposing the sentence, including the nature of the crime, the degree of harm, the need to protect the public, and aggravating factors. It described all the materials and information it reviewed, including Dr. Veraldi's report and testimony. The court's Judgment stated that Dr. Veraldi "was not made fully aware of all the things happening and the [c]ourt finds it was based solely on the Defendant's reported perception." The court concluded that paragraph by stating that it "cannot find an exception applies." The Judgment and the sentencing transcript reflect that the court was particularly troubled by Brown's lack of accountability and his evolving excuses for why he sent those text messages to L.H., including his early

19

contentions that he was "joking," that Carly encouraged him to send the text messages, and that his phone glitched, as well as other theories he invented during the pendency of the action—that his co-workers sent the text messages and that L.H.'s promiscuity was the problem.

¶39 The District Court complied with the requirements of § 46-18-223(1) and (2), MCA. Brown was not entitled to a separate hearing. Section 46-18-223(1), MCA, requires a hearing "prior to the imposition of sentence to determine the applicability of the exception." The sentencing hearing satisfied this requirement in this case. The court also "state[d] the reasons for its decision [regarding the duress exception] in writing and . . . include[d] an identification of the facts relied upon in making its determination" in the Judgment. *See* § 46-18-223(3), MCA. The District Court's interpretation and application of the sentencing statutes were correct.

## CONCLUSION

¶40 Having found no reversible error in any of Brown's claims, we affirm the District Court's Judgment.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

20