FILED

03/11/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0263

DA 24-0263

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 46

STATE OF MONTANA,

      Plaintiff and Appellant,

  v.

THOMAS JOSEPH BRENNAN,

      Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                 In and For the County of Lewis and Clark, Cause No. ADC-2023-181
                 Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

          Kevin Downs, Lewis and Clark County Attorney, Jessica L. Best, Deputy County Attorney, Helena, Montana

      For Appellee:

          Benjamin W. Reed, Attorney at Law, Helena, Montana

                        Submitted on Briefs:  January 15, 2025

                               Decided:  March 11, 2025

Filed:

                            _____
                                       Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      The State of Montana appeals the April 9, 2024 Order of the First Judicial District Court, Lewis and Clark County, granting Thomas Joseph Brennan (Brennan) a new trial and dismissing his conviction for sexual abuse of children following a jury verdict. We reverse and remand with instructions to reinstate Brennan's conviction.

¶2      We restate the following issue for review:

*Whether the District Court erred as a matter of law by granting Brennan's motion for a new trial and dismissing his conviction.*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3      On April 18, 2023, the State charged Brennan with four counts of felony sexual assault pursuant to § 45-5-502(1), MCA, and one count of felony sexual abuse of children pursuant to § 45-5-625(1)(a), MCA. A.H., Brennan's 14-year-old stepdaughter, disclosed to a school counselor that Brennan "made a habit" of entering her bedroom to watch her change clothes and touching her inappropriately when the two were alone. She further claimed that Brennan would frequently pull her hips against his groin and place one hand on her breasts while "snuggling" her in bed.

¶4      The three-day jury trial began on January 8, 2024. A.H. testified about her relationship with Brennan. Although Brennan had been in A.H.'s life since she was three, A.H. testified that she sensed a change in Brennan's attentions towards her when she was about nine years old. Previously innocent parental affection became uncomfortably intrusive and invasive for A.H. Brennan would often "snuggle" with her under the blankets in her bed, pressing his groin against her buttocks and cupping her breasts with his hands.

2

Sometimes A.H. could feel Brennan's erection while snuggling. Because A.H. slept in a twin bed positioned against her bedroom wall, she would be caught between the wall and Brennan. She additionally claimed that Brennan would grab her buttocks while she did chores or when passing her in the house. Sometimes, while Brennan drove, A.H. claimed he would rest his hand on her inner thigh, near her vagina. According to A.H., these incidents occurred when she was alone with Brennan. If Torrie, A.H.'s mother, came upstairs to A.H.'s bedroom, A.H. testified Brennan "would kind of move away . . . [l]ike sit up." Brennan's cuddling would last until A.H. "fell asleep, or like an hour[,]" leaving her feeling "trapped and . . . uncomfortable." When A.H. informed him of how this contact made her feel, Brennan became "mad at [her]."

¶5    Monique Gardner (Gardner), A.H.'s maternal grandmother, confirmed A.H.'s testimony regarding Brennan's cuddling. Gardner testified that one night, during a July 2022 visit to the family's home, she glanced into A.H.'s open bedroom door as she exited the nearby bathroom. With the hallway and bathroom lights on, Gardner could see directly into A.H.'s bedroom. Gardner noticed Brennan cuddling A.H. under the blankets against the wall. On cross-examination, she testified to having seen similar cuddling before and that the conduct "always kind of bothered [her]." Gardner indicated that, throughout their relationship, Brennan had disagreements with Gardner because of his perception that Gardner favored A.H. over the stepchildren Torrie shared with Brennan. Rather than risk "accusing someone" with whom she already had a fraught relationship, Gardner decided

3

to quietly inform Torrie that she was "disturbed" by "[Brennan] cuddling with [A.H.] when she's developing and being a little bit too old to be under a blanket" with him.

¶6     Further testimony from A.H. detailed how Brennan watched her change clothes in her bedroom after a shower, despite her attempts to hide her body from his gaze. Even when A.H. locked her door specifically for privacy from Brennan when she changed, Brennan would unlock the door and let himself into A.H.'s bedroom. A.H. asserted that Brennan would repeatedly knock on her locked doors until she opened them. Sometimes Brennan would ask innocuous questions while A.H. changed, leaving her wondering why the conversation could not have occurred after she finished dressing. On other occasions, while watching A.H. as she changed clothes, Brennan's voice became "slower and softer[,]" and he asked her about whether her interactions with "boys" ever became physical. A.H. claimed Brennan also asked her about grooming habits of her pubic area. Torrie confirmed that he had once "chime[d] in" during a conversation between Torrie and A.H. about menstruation and grooming.

¶7     A.H. testified she brought her feelings regarding Brennan's intrusions into her room to Torrie's attention. Despite Torrie's promise to speak with Brennan, nothing changed about his behavior. When asked on direct examination when she first became aware A.H. was uncomfortable with Brennan's behavior, Torrie initially answered she was unaware until the school counselor called her before correcting herself to note, "[A.H.] had one conversation with me before, and it wasn't about being uncomfortable, it was because she was upset that he walked into a room where the door was ajar." Torrie denied Brennan

4

"barge[d] in" to A.H.'s bedroom when A.H. was changing her clothes. However, Torrie did acknowledge that A.H. was upset because she had gotten out of the shower and she was in a towel in her room changing when Brennan entered. According to Torrie, Brennan only "innocuous[ly]" entered the room to ask A.H. to come downstairs to watch television. When asked about an incident when Brennan entered A.H.'s bedroom while A.H. and a teenaged friend changed clothes during a sleep over, Torrie at first claimed ignorance. However, when questioned further, Torrie acknowledged that Brennan had been in the room when the girls were changing but claimed Brennan entering A.H.'s room was not an unreasonable thing for him to do. Torrie claimed A.H. and her friend were undressed because, "being teenage girls," they were simply "changing outfits for whatever" reason. A.H. also testified that Torrie asked A.H. not to wear running shorts around her stepfather because he would stare at A.H.'s body. Torrie asserted that this prohibition on wearing running shorts only applied when the family had visitors.

¶8     Torrie's influence over A.H. was clearly an issue during trial. With trial pending, Brennan could not live in the home with A.H. Torrie nonetheless took A.H. to see where Brennan had been living in a camper. Torrie wanted to show A.H. that Brennan's present accommodations were not "a luxury Hilton hotel." A.H. testified that Torrie yelled at her that Brennan had to stay there "while you can be comfortable in our house." According to Torrie, A.H. felt betrayed that Torrie had spent a night there with Brennan without A.H. On cross-examination, the State questioned Torrie about possible efforts to dissuade A.H. from pursuing her story. Torrie responded that she did tell Brennan she would talk to A.H.

and get information from her after A.H. made her initial disclosures. Torrie also testified that school counselors "were making [A.H.] uncomfortable, pulling her out of class, giving her anxiety attacks." On the witness stand, Torrie recounted telling A.H. "that is up to you whether or not you want to talk to [the school counselors]" and that "if they're trying to pull you out of class tell them no . . . [y]ou're there for school." A.H. testified Torrie instructed her not to divulge further details of Brennan's behavior to school staff without consulting her first.

¶9 Brennan testified on his own behalf, claiming ignorance of A.H. feeling "sexually uncomfortable" due to his behaviors and denying that he watched her undress. However, he admitted to having at least once "cracked the door" while A.H. was using the bathroom but denied doing so when she was undressed or in the shower. In his forensic interview with law enforcement, Brennan downplayed A.H.'s claim that he would knock on her locked bedroom door but conceded he had "maybe" kept knocking on one occasion to "mess[] with her." Brennan further confirmed much of the physical contact underlying A.H.'s allegations: cuddling her in bed, resting a hand on her thigh while driving, and touching her buttocks as part of a "family game." This parallelled what Brennan said in his interview with law enforcement wherein Brennan admitted to "playful" contact with A.H.'s buttocks as part of a "family game," to "snuggling" with A.H. in her bed, sometimes "rub[bing] her stomach," and playing with her hair.

¶10 Brennan's testimony at trial was consistent with his answers in his forensic interview, which was entered into the record by the State. When asked why A.H. felt

6

uncomfortable because of Brennan's behavior, Brennan volunteered specific instances in which his behavior may have upset A.H.: "certain times where [A.H.] is in her room changing and I have been there . . . sometimes when I open the door to talk to the kids when they're in the shower . . . when we cuddle in bed." However, Brennan disagreed with A.H.'s characterization of his behavior as inappropriate, instead qualifying his conduct as affectionate, parental behavior. Still, he admitted that "maybe [the intrusions] happened enough times that it has sort of made her feel uncomfortable."

¶11 The jury returned a verdict of not guilty on the four counts of sexual assault and guilty on the one count of sexual abuse of children. Brennan then moved for a new trial and a dismissal of his conviction for sexual abuse of children, arguing that § 45-5-625, MCA, primarily criminalizes the production, possession, or viewing of child pornography, not the conduct of watching A.H. change her clothes that was established at trial. The court agreed that as a matter of law the conduct of watching A.H. change her clothes did not constitute sexual abuse of children. The court also found there was insufficient evidence to uphold the jury's verdict on this single count. Accordingly, the District Court granted Brennan's motion for a new trial and dismissed the count of child sexual abuse.

¶12 The State appeals pursuant to § 46-20-103, MCA.

**STANDARD OF REVIEW**

¶13 "Our standard of review of a trial court's ruling on a motion for a new trial depends on the basis of the motion." *State v. Ariegwe*, 2007 MT 204, ¶ 164, 338 Mont. 442, 167 P.3d 815 (citation omitted). While we generally review a motion for a new trial for an

7

abuse of discretion, we review an order on a motion for a new trial based on statutory interpretation de novo. *State v. Bell*, 277 Mont. 482, 485-86, 923 P.2d 524, 526 (1996) (citing *State v. Mummey*, 264 Mont. 272, 276, 871 P.2d 868, 870 (1994); *State v. Christensen*, 265 Mont. 374, 375-76, 877 P.2d 468, 468-69 (1994)). Our standard of review of a trial court's ruling on a motion for a new trial based on insufficiency of the evidence is de novo because the trial court's conclusion as to whether sufficient evidence exists is ultimately an analysis and application of the law to the facts, not a matter of discretion. *Ariegwe*, ¶ 164 (citing *Giambra v. Kelsey*, 2007 MT 158, ¶¶ 24-27, 338 Mont. 19, 162 P.3d 134). We review claims related to the sufficiency of evidence de novo in a light most favorable to the prosecution to determine whether a rational trier of fact could have found all the essential elements of the offence beyond a reasonable doubt. *State v. Burnett*, 2022 MT 10, ¶ 15, 407 Mont. 189, 502 P.3d 703.

**DISCUSSION**

**A. Whether the District Court Correctly Interpreted § 45-5-625(1)(a), MCA.**

¶14 The District Court found that A.H.'s testimony on the facts underlying the sexual abuse of children count was largely uncontested, but held that "[t]his evidence, though alarming, does not demonstrate the Defendant employed, used, or permitted the employment or use of A.H. in an exhibition of sexual conduct, actual or simulated." The court determined that Brennan's account of the incidents "largely corroborated testimony of A.H." but that neither the testimony of Brennan nor A.H. established the elements of the crime of sexual abuse of children.

8

¶15    In relevant part, § 45-5-625(1)(a), MCA, provides:

> **Sexual abuse of children**. (1) A person commits the offense of sexual abuse
> of children if the person:
> (a) knowingly employs, uses, or permits the employment or use of a child in
>     an exhibition of sexual conduct, actual or simulated[.]

In the construction of a statute, we look first to its plain language, giving the words their usual, ordinary meaning; if the language is clear and unambiguous on its face, we need not engage in any further construction. *State v. Felde*, 2021 MT 1, ¶ 16, 402 Mont. 391, 478 P.3d 825. Section 45-5-625, MCA, broadly prohibits the victimization of children. *Felde*, ¶ 17. In addition to subsection (1)(a), the statute prohibits possession, production, and distribution of child pornography, §§ (1)(b), (d), (e), (f), (g), (i); and traveling with a child with the intention of engaging in sexual conduct, or otherwise enabling a child's travel for the purposes of sexual conduct is criminalized, §§ (1)(h), (i). Here, the issue falls under subsection (1)(a): whether Brennan knowingly used a child in an exhibition of sexual conduct.

¶16    Section 45-5-625, MCA, proscribes multiple variants of conduct by which a person engages in sexual abuse of children by exploiting them. "The statute makes clear that using, photographing, recording, or soliciting a child in any exhibition of actual or simulated sexual conduct is an offense." *Felde*, ¶ 17. The subsection under which Brennan was charged was subsection (1)(a) because he knowingly "used" a child in an "exhibition of sexual conduct." As defined by statute and relevant to the instant facts, sexual conduct refers to, among other things, a "lewd exhibition of genitals, breasts, pubic or rectal areas, or other intimate parts of any person" *or* a "depiction of a child in the nude or in a state of

9

partial undress with the purpose to abuse, humiliate, harass, or degrade the child or to arouse or gratify the person's own sexual response or desire[.]" Sections 45-5-625(5)(b)(i)(F), (5)(b)(ii), MCA. Thus, either a "lewd exhibition" or a "depiction" of a nude child for purposes of humiliating the child or gratifying the person's own desire will constitute "sexual conduct" for purposes of a conviction under subsection (1)(a). "Use" means "to employ for the accomplishment of a purpose; to avail oneself of; . . . to put into practice or employ habitually or as a usual way of doing something; to follow as a regular custom," or "to take advantage of (someone) for selfish purposes; to make (a person) an involuntary means to one's own ends." *Use*, *Black's Law Dictionary* (12th ed. 2024). An "exhibition" means "an act or instance of showing, evincing, or showing off." *Exhibition*, *Webster's Third International Dictionary* (3rd ed. 2002). We address first whether Brennan's practice of entering A.H.'s bedroom to watch her changing clothes constitutes a "lewd exhibition" of the intimate parts of A.H.'s body.

¶17 We have previously affirmed a conviction for sexual abuse of children where a stepfather sent text messages to his stepdaughter encouraging his stepdaughter to "pose nude or nearly nude." *State v. Brown*, 2022 MT 176, ¶ 26, 410 Mont. 38, 517 P.3d 177, *abrogated on other grounds*, *Ramsey v. Yellowstone Cnty. Justice Ct.*, 2024 MT 116, ¶ 11 n.4, 416 Mont. 472, 549 P.3d 538. The State had charged Brown with sexual abuse of children under § 45-5-625(1)(c), MCA (2017),[1] which prohibits knowingly, by means of electronic communication or in person, "persuad[ing], entic[ing], counsel[ing], coerc[ing],

---

[1] The relevant portions of the 2017 version of § 45-5-625, MCA, correspond to the current version.

encourag[ing], direct[ing], or procur[ing] a child under the age of 16 years of age . . . to engage in sexual conduct, actual or simulated." *Brown*, ¶ 23. There, Brown had sent texts to his stepdaughter asking her to "leave [her] door open a crack." *Brown*, ¶ 25. Brown ignored his stepdaughter repeatedly saying "No" or otherwise attempting to deflect and dismiss his advances. *Brown*, ¶ 24. Had she complied with his request, Brown would have then had the opportunity to view her in a state of undress, which we held to mean a "lewd exhibition." *Brown*, ¶ 25.

¶18     Similarly, in *State v. Marshall*, 2007 MT 198, ¶¶ 26, 29, 338 Mont. 395, 165 P.3d 1129, we construed asking a child to "pose [nude]" for the defendant's sexual gratification in exchange for money as an attempt at employing a child in a "lewd exhibition" prohibited by § 45-5-625(1)(a), MCA (2005).[2] Marshall was convicted of attempted sexual abuse of children because he intended "to have [a child] pose for him in private, in such a manner that he could perform his previously expressed fantasies." *Marshall*, ¶ 29. The jury instructions defined "lewd" as the "gross flouting of community standard in respect to sexuality or nudity in public." *Marshall*, ¶ 28. We explained:

> Here, if J.M. had immediately taken Marshall up on his offer, she would have flouted her nudity in public at his request. However, it is also possible, and somewhat more probable, that the jury inferred that Marshall's intention was to have J.M. pose for him in private, in such a manner that he could perform his previously expressed fantasies. Such action with an eleven-year-old minor certainly flouts community standards, and the jury therefore could have found, beyond a reasonable doubt, that Marshall sought to employ J.M. in sexual conduct, namely a lewd exhibition of her intimate parts.

*Marshall*, ¶ 29.

---

[2] The relevant portions of the 2005 version of § 45-5-625, MCA, correspond to the current version.

¶19 In *State v. Smith*, 2021 MT 148, ¶ 4, 404 Mont. 245, 488 P.3d 531, we affirmed a conviction for sexual abuse of children under § 45-5-625, MCA (2015),[3] where the defendant demanded his young daughter engage in a provocative dance in her underwear. Smith "did not touch [his daughter]" and did not touch himself, but he did disrobe and became noticeably aroused in front of her. *Smith*, ¶ 4. He did not record any images or create any pornographic materials from the incident. *Smith*, ¶ 4. While the State did not charge Smith under a specific subsection of § 45-5-625, MCA, Smith was ultimately convicted for viewing his daughter in a state of undress while performing a sexually charged dance. *Smith*, ¶ 13.

¶20 Here, the State charged Brennan with sexual abuse of children under § 45-5-625(1)(a), MCA, accusing him of knowingly using A.H. in "an exhibition of sexual conduct" by "entering A.H.'s bedroom and watching her change clothes or get dressed after a shower." As in the cases discussed above, Brennan's conduct did not include creating pornographic images of children. Unlike *Marshall* or *Brown*, however, the charging documents in this case do not mention and indeed no evidence in the record suggests a transaction of any sort involving payment for a sexual performance. However, § 45-5-625(1)(a), MCA, does not require an economic exchange as the statute distinguishes "use" from "employment." The plain language of the statute supports a conclusion that taking advantage of a child's nudity or involuntary participation in a lewd exhibition, such

---

[3] The relevant portions of the 2015 version of § 45-5-625, MCA, correspond to the current version.

as viewing a child in a state of undress as in *Marshall* and *Brown* or the provocative dance in *Smith*, corresponds to the conduct prohibited by § 45-5-625(1)(a), MCA.

¶21 Thus, while § 45-5-625, MCA, specifically criminalizes the production and possession of child pornography, travelling to enable sexual activity with a child, and sexually explicit communications with a child, § 45-5-625(1)(a), MCA, further criminalizes an in-person sexualized exhibition of a child unmediated by technology. Accordingly, we find that the District Court's interpretation of the statute was in error and reverse.

¶22 In similar fashion, the viewing of A.H. while she changed her clothes was "a depiction of a child in the nude or in a state of partial undress" for the purpose of either "humiliat[ing]" A.H. *or* gratifying Brennan's own sexual desires. The statute defines "sexual conduct" disjunctively, listing a number of alternatives that meet the definition, including, as pertinent here based on how the jury was instructed, the "depiction of a child in the nude or in a state of partial undress with the purpose to abuse, humiliate, harass, or degrade the child or to arouse or gratify the person's own sexual response or desire[.]" Section 45-5-625(5)(b)(ii), MCA. The plain meaning of depiction includes "the way that something is represented or *shown*, or something that represents or shows something." *Depiction*, *Cambridge Dictionary* (Cambridge University Press), https://perma.cc/4DSQ -ZKS3 (emphasis added). Thus, although "depiction" can be a physical representation such as a picture or video, the term "depiction" can also include a broader range of conduct such as a live performance. Such an expansive interpretation is consistent with the United States

13

Supreme Court's analysis in *New York v. Ferber*, 458 U.S. 747, 102 S. Ct. 3348 (1982). In *Ferber*, the Court included "live performances" in its discussion of "depictions," concluding that a depiction can be a live performance of nudity for the sexual gratification of the audience. *Ferber*, 458 U.S. at 762, 102 S. Ct. at 3357. Accordingly, here, Brennan's conduct of observing A.H. for purposes of his sexual gratification or to humiliate A.H. was a "depiction" that constituted sexual conduct for purposes of § 45-5-625(1)(a), MCA.

¶23 The Dissent faults the Court on numerous occasions for addressing "lewd exhibition" of sexual conduct when the jury was instructed only on the "depiction of a child in the nude or in a state of partial undress." Dissent, ¶ 37. The Dissent fails to comprehend the procedural context of these proceedings. This is an appeal by the State pursuant to § 46-20-103, MCA, of the District Court's order dismissing its case and finding that Brennan's conduct, which is largely undisputed by the State and Brennan, did not constitute the criminal offense of sexual child abuse. The inquiry is limited to considering the evidence and whether any of the evidence would satisfy the elements of the charged offense. Here, the State charged Brennan under § 45-5-625(1)(a), MCA, alleging Brennan committed sexual child abuse when he knowingly used A.H. "in an exhibition of sexual conduct . . . ." As is clear, the charge itself contains the term "exhibition," and this Court has also explained that the evidence produced at trial satisfied two of the definitions of sexual conduct: a lewd exhibition and a depiction. The State's appeal focuses on the elements of § 45-5-625(1)(a), MCA, and whether its evidence satisfied those elements. This Court is tasked with examining the entirety of the evidence within the context of

§ 45-5-625(1)(a), MCA, not any errors that Brennan alleges occurred during the trial. We are not, at this juncture, asked to consider the propriety of giving any particular jury instruction or upon what theory the case was argued to the jury. Here, we conclude only that the State's evidence satisfied two types of criminal conduct and that the District Court, therefore, erred in dismissing the State's case for failing to satisfy the elements of sexual child abuse. Our decision is not bound or defined by how the jury was instructed. Whether the jury was instructed correctly and other potential alleged errors in these proceedings must await Brennan's appeal upon the entry of conviction. He will have the opportunity to appeal his conviction and any errors he alleged occurred during the lower court proceedings. Thus, quite to the contrary, it is the Dissent that raises issues sua sponte and decides them without the benefit of briefing and argument by the parties which would occur in Brennan's direct appeal, should he decide to pursue an appeal. Dissent, ¶ 42. We decide here only that the evidence satisfied the elements of the offense and that the District Court erred in determining otherwise. Brennan may take an appeal only upon "a final judgment of conviction," § 46-20-104, MCA, which has never happened in these proceedings. Thus, the Dissent reaches far beyond what this Court may answer under the circumstances of this appeal.

¶24    The Dissent further contends that this Court has decided the case based on policy reasons. The Dissent rebukes the Court, asserting that the Court exceeds our authority and thereby encroaches on the Legislature's authority to determine the public policy of the state of Montana by concluding the in-person viewing of a child in a lewd exhibition satisfies

15

§ 45-5-625(1)(a), MCA. Dissent, ¶ 59. The Legislature broadly intended for § 45-5-625, MCA, to protect children from becoming unwitting performers for an adult's sexual gratification, either in-person, § 45-5-625(1)(a), MCA, or memorialized through some other medium, §§ 45-5-625(b)-(i), MCA. *See Felde*, ¶ 17. The Legislature left "depiction" undefined in the statute but thoroughly defined "visual medium" as containing the common expressive vehicles for pornography. Section 45-5-625(5)(d), MCA. Brennan watched A.H. change clothes after showering. Whether this constituted a "performance" for the purposes of a "depiction" turns on Brennan, as the viewer of A.H. "nude or in a state of partial undress," causing her humiliation because of her powerlessness to prevent exposure of her body to his gaze. Section 45-5-625(5)(b)(ii), MCA. It would be absurd to conclude that Brennan did not commit a crime because he did not photograph A.H. and only personally observed her naked or partially clothed and where he could continue to humiliate and speak to A.H. in person. The record establishes that Brennan's invasions of A.H.'s dignity and privacy persisted—despite repeated pleas and articulations that the conduct made her uncomfortable.

## B. Whether Sufficient Evidence in the Record Supports a Conviction.

¶25 The State needed to prove beyond a reasonable doubt that Brennan knowingly "employed, used, or permitted the employment or use of a child in an exhibition of sexual conduct, actual or simulated." *See* § 45-5-625(1)(a), MCA. The jury instructions defined "sexual conduct" as the "depiction of a child in the nude or in a state of partial undress with the purpose to abuse, humiliate, harass, or degrade the child or to arouse or gratify the

person's own sexual response or desire of the sexual response of any person." Additionally, the jury instructions defined "knowingly" as "when the person is aware of his own conduct."

¶26 In *Marshall*, the defendant had asked his child victims if they would take off their clothes or allow him to touch their bodies for money, in addition to making inappropriate comments about his own sexual desires towards the children and admitting to performing simulated sex acts in front of them. *Marshall*, ¶¶ 6, 7. Marshall had asserted that the State failed to prove he had the specific purpose of employing the girls in sexual conduct. We held that the evidence establishing Marshall sought to watch and observe the girl and her intimate parts provided a "rational trier of fact" with enough evidence to infer, beyond a reasonable doubt, the defendant's intent to take "a material step towards the commission of sexual abuse of children." *Marshall*, ¶ 26.

¶27 Here, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could determine, beyond a reasonable doubt, that Brennan knowingly used a child in a lewd exhibition or a depiction of nudity for purposes of his own sexual gratification or to humiliate A.H. The uncontested evidence presented at trial demonstrated that Brennan, on numerous occasions, entered the bedroom of his stepdaughter as she showered or emerged from a shower, watched her change clothing, and that this made her feel uncomfortable. The District Court's order acknowledged that Brennan repeatedly and "alarmingly" watched his stepdaughter in various stages of undress, as established not only by A.H. but also Torrie. Gardner also testified to feeling uncomfortable enough with what

17

she witnessed of Brennan's conduct that she informed Torrie.  Importantly, Brennan's own testimony and his forensic interview provided support for A.H.'s allegations of his repeated invasions of her privacy.  The character evidence from various friends and family presented by Brennan at the close of trial did little to belie A.H.'s recollections of Brennan's conduct, which she maintained largely happened when she was alone with her stepfather.

¶28    A.H.'s testimony at trial established that this behavior humiliated her.  Her testimony established that she informed her mother and Brennan of how the behavior made her feel.  Despite this, Brennan continued to enter A.H.'s room to watch her change.  The jury could have reasonably inferred Brennan knowingly entered A.H.'s bedroom after showering because she would be undressed.  A.H. testified that this violation of her privacy, Brennan's intrusions, and his inescapable gaze humiliated her despite her attempts at setting clear boundaries with her parents.

¶29    Based on this evidence, the jury could have concluded that Brennan used A.H.'s naked body for his own sexual gratification and arousal.  Although the jury did not convict Brennan of sexual assault, the jury could still rely on this testimony to infer intent.  The full context of Brennan's conduct toward A.H. could provide a jury with enough evidence to reasonably infer Brennan's persistent viewing of A.H. served his own sexual gratification.  We therefore reverse the District Court's conclusion that that the evidence presented at trial was insufficient to support a conviction under § 45-5-625(1)(a), MCA.

## CONCLUSION

¶30 We conclude that the District Court erred as a matter of law by determining that § 45-5-625(1)(a), MCA, did not prohibit the in-person viewing of a lewd exhibition of a naked or partially naked child. Further, the evidence did support the jury's verdict finding Brennan guilty of sexual abuse of a child. Accordingly, we reverse the District Court's order granting Brennan's motion for a new trial and dismissing the charge of sexual abuse of a child. We remand with instructions to reinstate the jury's verdict and conviction of Brennan for sexual abuse of children.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE

Justice Katherine Bidegaray, dissenting.

¶31 I dissent from the Majority decision to reverse the District Court by applying a definition of "sexual conduct" that the State never charged or argued, on which the jury was never instructed, and for which Brennan was not convicted. For the following reasons, I would affirm the District Court's grant of Brennan's post-verdict motion for judgment of acquittal.

### A. Majority Erroneously Inserts Inapplicable § 45-5-625(5)(b)(i)(F), MCA, "Lewd Exhibition" Definition of "Sexual Conduct."

19

¶32 Here, the Majority applies, sua sponte, the § 45-5-625(5)(b)(i)(F), MCA, definition of "sexual conduct" when that provision was not charged, argued, or instructed below. Rather, the State charged Brennan by Information with Sexual Abuse of Children as defined by § 45-5-625(1)(a), MCA, based on allegations that he:

> knowingly used A.H. in an exhibition of sexual conduct, actual or simulated, by entering A.H.'s bedroom and watching her change clothes or get dressed after a shower.

And, more specifically, that:

> [A.H.] stated [Brennan] would come into her room while she was changing or after she just got out of the shower. She stated he would enter the room and act like he needed to get something or set something down. [She] stated [Brennan] would just stay in the room. [A.H.] stated she would have to try to cover up with a towel while changing clothes. She stated [Brennan] would just watch her. [She] stated [Brennan] would leave the room after she changed her clothes. [A.H.] stated if, she tried locking the door [Brennan] would "bang" on the door until she opened it.

¶33 Further, the District Court instructed the jury on the offense of Sexual Abuse of Children, as defined by § 45-5-625(1)(a) and charged in the Information (Instruction Nos. 31, 32), and (5)(b)(ii), as requested by the State (Instruction No. 33), MCA. Instruction No. 31 provided:

> A person commits the offense of sexual abuse of children if the person knowingly employs, uses, or permits the employment or use of a child in an exhibition of sexual conduct, actual or simulated.

Instruction No. 32 provided:

> To convict the Defendant of sexual abuse of children, the State must prove the following elements:
>
> 1. That the Defendant employed, used, or permitted the employment or use of a child in an exhibition of sexual conduct, actual or simulated.

20

2. That the Defendant acted knowingly.

If you find from your consideration of the evidence that all of these elements have been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of the evidence that any of these elements has not been proved beyond a reasonable doubt then you should find the Defendant not guilty.

Finally, Instruction No. 33 provided:

"Sexual conduct" means depiction of a child in the nude or in a state of partial undress with the purpose to abuse, humiliate, harass, or degrade the child or to arouse or gratify the person's own sexual response or desire or the sexual response or desire of any person.

*Compare* § 45-5-625(5)(b)(ii), MCA (identical language as Instruction No. 33). The State did not request or argue, and the court did not give, any jury instruction on the § 45-5-625(5)(b)(i)(F), MCA, "lewd exhibition" definition of sexual conduct that the Majority applies to reverse the District Court here. *See* § 45-5-625(5)(b)(i)(F), MCA ("sexual conduct" means "lewd exhibition of the genitals, breasts, pubic or rectal area, or other intimate parts of any person").

¶34     Squarely at issue in Brennan's post-verdict § 46-16-702, MCA, motion and the court's resulting order, which the State is appealing here,[1] was whether the State had met

---

[1] *See* § 46-20-103(2)(b), MCA ("[t]he state may appeal from any court order . . . modifying or changing the verdict as provided in 46-16-702(3)(c)"); § 46-16-702(3)(c), MCA ("[o]n hearing the [defendant's] motion for a new trial, if justified by law and the weight of the evidence, the court may . . . modify or change the verdict or finding by finding the defendant guilty of a lesser included offense or finding the defendant not guilty"). We review a district court's grant or denial of a § 46-16-702 motion based on the sufficiency of the evidence de novo to determine if, viewing the trial evidence in a light most favorable to the State, no rational juror could have found all of the essential elements of the crime beyond a reasonable doubt. *See State v. Bomar*, 2008 MT 91, ¶¶ 11, 15, 25, 342 Mont. 281, 182 P.3d 47; *State v. McWilliams*, 2008 MT 59, ¶¶ 41, 42 n.2, 341

21

its burden of proof under § 45-5-625(1)(a), MCA, as charged and instructed, and (5)(b)(ii), as instructed. Brennan argued that, even though the State had elicited testimony that he "either watched A.H. change clothes or get dressed after a shower," that conduct was not criminal under § 45-5-625(1)(a) and (5)(b)(ii), MCA. To wit:

> the statute with which [Brennan] was charged does not apply. There is no construction of the statute that does not strain its plain language that would make simply watching A.H. change clothes or get dressed after a shower a crime. There is, in fact, no statute that criminalizes this conduct. There is no positive obligation to look away that is punishable under Montana's criminal law.[2]

In granting Brennan a § 46-16-702(3)(c), MCA, judgment of acquittal, the District Court analyzed the sufficiency of the trial evidence to sustain the jury's verdict under § 45-5-625(1)(a) and (5)(b)(ii), MCA, as instructed. The State did not raise, and the court did not consider, any "alternative" means for defining the elements of the offense.

¶35 Finally, the State does not assert, much less argue, that it *sought conviction* under the § 45-5-625(5)(b)(i)(F), MCA, "lewd exhibition" definition of sexual conduct. Instead, in reply to Brennan's appellate assertion that *State v. Marshall*, 2007 MT 198, 338 Mont.

---

Mont. 517, 178 P.3d 121 (citing *State v. Ariegwe*, 2007 MT 204, ¶ 164, 338 Mont. 442, 167 P.3d 815). "[T]he fundamental principle subsumed in this standard" is that "the prosecution must establish each and every element of the charged offense by proof beyond a reasonable doubt." *State v. Fuller*, 266 Mont. 420, 422-23, 880 P.2d 1340, 1342-43 (1994) (statutory definition of "sexual contact" (requiring actual "touching") underlying charged attempted sexual assault offense a "necessary element of the offense"); *State v. White Water*, 194 Mont. 85, 86-88, 90, 634 P.2d 636, 636-39 (1981) (statutory definition of "sexual intercourse" (requiring "penetration") underlying charged SIWC offense was "one essential element of the offense"); *State v. Landis*, 2002 MT 45, ¶¶ 25-28, 308 Mont. 354, 43 P.3d 298 (statutory definition of "owner" (a "person" having "possession of or other interest in the property involved") underlying charged theft offense was an "element of the theft offense").

[2] *See* Brennan's Motion for New Trial and Brief in Support (Docs. 59, 60).

22

395, 165 P.3d 1129, is inapplicable because it involved a conviction under the "lewd exhibition" definition,[3] the State asserts *for the first time* that, "like many of the definitions of sexual conduct," (5)(b)(ii) and (5)(b)(i)(F) "can intersect and often apply to the same conduct." The State then goes on to assert that

> Brennan's jury . . . *could have been given* a jury instruction that included the definition under (5)(b)(i)(F), i.e., "lewd exhibition" of the child, instead of *only being instructed* pursuant to the definition at (5)(b)(ii), i.e., "depiction of the child." However, because the evidence at trial established that Brennan's conduct *overlapped with both definitions*, the jury was appropriately instructed.

(Emphasis added; citations omitted.) Here, the State *did not ask* for a jury instruction on the (5)(b)(i)(F) "lewd exhibition" definition of sexual conduct and instead *only* requested instruction on the (5)(b)(ii) "depiction" definition. For reasons discussed below, those variants of sexual conduct do not overlap, and the only definition of sexual conduct appropriate to consider on appeal is the definition on which the jury was instructed—Instruction No. 33, the (5)(b)(ii) "depiction" definition.

¶36 We have consistently admonished appellate parties that we will not consider issues raised for the first time on appeal; allow a party to change its legal theory on appeal; or hold a District Court in error for an issue it never had an opportunity to consider. *State v. Mallak*, 2005 MT 49, ¶ 31, 326 Mont. 165, 109 P.3d 209 (it is "fundamentally unfair to fault a district court for failing to rule correctly on an issue which it was never given the

---

[3] In *Marshall*, the "lewd exhibition" definition of "sexual conduct" was codified at § 45-5-620(1)(f), MCA (2003). *Marshall*, ¶ 23. In 2007, that section became § 45-5-625(5)(b)(i)(F), MCA, language unchanged. 2007 Mont. Laws ch. 29, §§ 1, 3.

opportunity to consider"); *State v. Fergusen*, 2005 MT 343, ¶¶ 67-68, 330 Mont. 103, 126 P.3d 463 (nor do we generally "address issues raised for the first time in a reply brief"). Further, pursuant to constitutional due process principles, "[i]t is elementary that a party cannot be charged with one offense and convicted of another independent offense." *State v. Barker*, 260 Mont. 85, 89, 858 P.2d 360, 362 (1993). However, here the Majority embraces the State's new arguments and legal theory, despite these established principles.

¶37 Because the State did not charge Brennan for having engaged in, or seek to have Brennan's jury instructed on, the "lewd exhibition" variant of "sexual conduct," the jury could never have convicted Brennan of § 45-5-625(1)(a), MCA, sexual abuse of children under the "lewd exhibition" definition. It is axiomatic that juries must apply the law only as instructed. *See State v. Sanchez*, 2008 MT 27, ¶ 57, 341 Mont. 240, 177 P.3d 444 ("American jurisprudence depends on a jury's ability to follow instructions and juries are presumed to follow the law that courts provide"); *State v. Crawford*, 2002 MT 117, ¶ 27, 310 Mont. 18, 48 P.3d 706 (an instruction "becomes the law of the case once delivered, and the jury is accordingly bound by it"). The District Court stated as much when it instructed the jury that it was to "take the law in this case from [the court's] instructions alone" and could not "decide [the] case contrary to" the given instructions. Instruction No. 2. Accordingly, the Majority cannot today sustain and "reinstate" Brennan's conviction on the State's brand new legal theory that it never charged, argued, or submitted to the jury below.

**B. Majority Erroneously Construes and Conflates the § 45-5-625(5)(b)(i)(F) and (5)(b)(ii) Definitions of "Sexual Conduct."**

24

¶38    Next, the Majority misconstrues and conflates the § 45-5-625(5)(b)(i)(F) and (5)(b)(ii) definitions of "sexual conduct" to hold that the State could have satisfied its burden of proof on the § 45-5-625(1)(a), MCA, Sexual Abuse of Children offense with proof of *either* form of conduct. *See, e.g.*, Opinion, ¶ 22 (§ 45-5-625(5) "defines 'sexual conduct' disjunctively, listing a number of alternatives that meet the definition").

¶39    In construing a statute, "[w]e give words in the statute their usual, ordinary meaning," and construe the statute "as a whole and in light of its surrounding sections to avoid conflicting interpretations." *State v. Felde*, 2021 MT 1, ¶ 16, 402 Mont. 391, 478 P.3d 825.

¶40    Section 45-5-625(1)(a), MCA, provides that

> A person commits the offense of sexual abuse of children if the person . . . knowingly employs, uses, or permits the employment or use of a child in an exhibition of sexual conduct, actual or simulated.

Section 45-5-625(5)(b), MCA, defines "sexual conduct" to include two distinct variants:

(1)    "actual or simulated . . . lewd exhibition of the genitals, breasts, pubic or rectal area, or other intimate parts of any person" ((5)(b)(i)(F)); or

(2)    "depiction of a child in the nude or in a state of partial undress with the purpose to abuse, humiliate, harass, or degrade the child or to arouse or gratify the person's own sexual response or desire or the sexual response or desire of any person" ((5)(b)(ii)).

Section 45-5-625(5)(b)(i)(F) ("lewd exhibition" definition), (5)(b)(ii) ("depiction" definition), MCA. Here, the Majority bases its analysis on the first definition; whereas the State had the court instruct the jury only on the second definition.

¶41    As a threshold matter, these definitions of "sexual conduct" are not interchangeable, because each requires distinct elements of proof. For example, the "lewd exhibition"

25

definition identifies specific body parts of the child that must be lewdly exhibited, i.e., "the genitals, breasts, pubic or rectal area, or other intimate parts." Conversely, the "depiction" definition requires proof that the "depiction" was "of a child in the nude or in a state of partial undress." In addition to prescribing different forms of conduct, (5)(b)(i)(F) and (5)(b)(ii) differ in a critical aspect: the mental state required for the offense. While § 45-5-625(1)(a) and (5)(b)(i)(F) require only a "knowingly" mental state as to the person's conduct, § 45-5-625(1)(a) and (5)(b)(ii) require *additional* proof of a specific "purpose," i.e., "the purpose to abuse, humiliate, harass, or degrade the child or to arouse or gratify the person's own sexual response or desire or the sexual response or desire of any person."[4]

¶42 When proposing the 2007 amendments to § 45-5-625, MCA, including the new (5)(b)(ii) definition of "sexual conduct," the bill sponsor expressly explained the purpose for requiring a specific purpose mental state.

> There's a fairly wide range of inappropriate sexual photographs that we would all agree constitute child pornography, that probably aren't covered under current law. . . . [Prosecutors have had cases] in which they were presented with photographs that depict children in compromising positions, that might not necessarily constitute sexual conduct, but again, certainly are exploitive, and wrong, and it's the kind of conduct we all want to work together to protect children from. . . . There may be a photo, for example, of a mother holding her baby in a certain position that would be a nude child that wouldn't constitute child pornography. Certainly, we're not trying to prohibit a photograph that would depict a baby's bottom in the bathtub and so on. . . . [T]his language *carves out the kind of distinction* that we all want:

---

[4] As such, the Majority's application of § 45-5-625(5)(b)(i)(F), MCA, to sustain Brennan's conviction under § 45-5-625(1)(a) and (5)(b)(ii), MCA, *lessens the State's burden of proof.* To obtain a conviction under that theory, the State was *not* required to prove that Brennan acted with the specific purpose to humiliate A.H. or to sexually gratify himself. *Compare* § 45-5-625(1)(a), (5)(b)(i)(F), (5)(b)(ii), MCA.

26

to protect children but not implicate innocent conduct that we don't want to get after.

. . . Child pornography can be, for example, a 12-year-old girl who is photographed wearing a necklace, makeup and a hat, and no other clothing, in high-heeled shoes . . . or a child lying in a sexual position on a bed who's 9-years-old, not necessarily engaging in sexual conduct, but again, it's clear that *the criminal intent* in these photographs is to arouse the sexual desire of the person taking the photograph. . . . [T]he language that we're trying to include not only touches on a desire to arouse or gratify a person's sexual desire, but also *the purpose* to abuse, humiliate, harass or degrade.

Then, the Assistant Attorney General added that:

The challenge to the prosecution is to prove that the person had an intent, or it was that person's *purpose to utilize that material for sexual or arousal purposes*. So, with that condition in the law, . . . it gives [prosecutor's] a tool to use, as well as some protection for people who possess innocent pictures of children in various states of undress.

*See* 2007 Mont. Laws ch. 29, §§ 1, 3 (amending § 45-5-625 and repealing former § 45-5-620); H.R. 82, 60th Leg., Reg. Sess. (2007);[5] *House Judiciary Committee Hearing Minutes on HB 82*, 60th Leg. Sess. (Jan. 9, 2007) (emphasis added).

¶43    To construe the offense of sexual abuse of a child as defined by § 45-5-625(1)(a) and (5)(b)(ii), MCA, as charged and instructed in this case, we may resort to dictionary definitions for the undefined terms "exhibition" and "depiction," and their respective roots, to "exhibit" and "depict." *See State v. Christiansen*, 2020 MT 237, ¶ 95, 401 Mont. 247, 472 P.3d 622. "Exhibition," as used in § 45-5-625(1)(a) ("exhibition of sexual conduct"), commonly means "an act or instance of showing, evincing, or showing off; a public show

---

[5] HB 82 was titled: "An Act Revising the Elements of the Crime of Possession of Child Pornography; Providing Definitions; Amending Sections 45-5-625 and 50-9-501, MCA; and Repealing Section 45-5-620, MCA."

or showing." *Webster's Third New International Dictionary (Unabridged)* (2021) (hereinafter, *Webster's*). Its root, to "exhibit," commonly means to "present to view," "show publicly," or "put on display in order to attract." *Webster's*. "Depiction," as used in § 45-5-625(5)(b)(ii), MCA ("depiction of a child"), commonly means a "representation"[6] or "portrayal." Its root, to "depict," commonly means "to form a likeness," "represent," or "portray." *Webster's*. *See also* Cambridge Dictionary ("depict" means "to represent or show something in a picture or a story").[7] With these common definitions in mind, in its simplest terms and as pertinent here, the offense of sexual abuse of a child as defined by § 45-5-625(1)(a) and (5)(b)(ii), MCA, punishes a person who "knowingly employs" or "uses" a child in an "exhibition," i.e., *a presentation or showing*, of sexual conduct, where the sexual conduct being presented or shown is a "depiction," i.e., *representation or likeness*, of the child in the nude or a state of semi-undress. Contrary to the Majority's holding, § 45-5-625(1)(a) and (5)(b)(ii), MCA, do not punish "the conduct of observing" A.H., in person. Further, contrary to the State's assertion, with which the Majority agrees, "watching" a child in a state of partial undress does not "constitute a depiction of a child in the nude." Opinion, ¶ 22 (holding that Brennan's "conduct of observing A.H. . . . was a 'depiction' that constituted sexual conduct").

¶44 Moreover, the cited cases do not support the Majority's construction. For example, in *Marshall*, we noted that the State's burden of proof on the "lewd exhibition" variant of

---

[6] A "representation" commonly means "a likeness, picture, model, or reproduction." *Webster's*.

[7] https://perma.cc/BJ5F-64J5 (last visited March 10, 2025).

28

sexual conduct (charged as attempted sexual abuse of children under §§ 45-5-625(1)(a), -620(1)(f), and 45-4-103(1), MCA (2003)), was "to show that Marshall was not just being crass or making a random lewd comment when he suggested that J.M. take off her clothes if she wanted $150, but was seriously *propositioning J.M.* to take her clothes off *and show him* her crotch, or other intimate parts, *for lewd purposes*." *Marshall*, ¶¶ 18, 23-29 (emphasis added). Similarly, in *State v. Brown*, 2022 MT 176, 410 Mont. 38, 517 P.3d 177, we held that the State met its burden of proof under the "lewd exhibition" variant of sexual conduct (charged under § 45-5-625(1)(c), MCA[8]) with testimony that Brown sent text messages to his 12-year-old stepdaughter *offering* "*to give* [her] $1,000 *and suggest*[*ing*] that [she] pose nude with the door cracked open." *Brown*, ¶¶ 20-27 (emphasis added). *Felde* involved resolving the defendant's assertion that the State impermissibly charged him with multiple counts of "possession of child pornography" based on his possession of numerous discrete pornographic images within the same computer. *Felde*, ¶¶ 9-22. Felde was charged under § 45-5-625(1)(e), MCA, a completely different form of sexual abuse of children than the § 45-5-625(1)(a) and (5)(b)(ii), MCA, variant at issue here.[9] In *State v. Smith*, 2021 MT 148, 404 Mont. 245, 488 P.3d 531, we never identified,

---

[8] Section 45-5-625(1)(c), MCA, required that he "knowingly, by any means of communication, including electronic communication or in person, persuade[], entice[], counsel[], coerce[], encourage[], direct[], or procure[] a child under 16 years of age . . . to engage in sexual conduct, actual or simulated, or to view sexually explicit material or acts for the purpose of inducing or persuading a child to participate in any sexual activity that is illegal."

[9] Section 45-5-625(1)(e), MCA, requires "knowing[] possess[ion] [of] any visual or print medium, including a medium by use of electronic communication in which a child is engaged in sexual conduct, actual or simulated."

29

much less considered, the specific definition of sexual conduct at issue, beyond that the defendant had been charged pursuant to § 45-5-625(1)(a), MCA.[10]

¶45    None of these cases involved application of the (5)(b)(ii) "depiction" definition of sexual conduct and are factually and analytically distinguishable for that reason alone. Nonetheless, the Majority draws comparisons, but only after erroneously inserting and applying the (5)(b)(i)(F) "lewd exhibition" definition of sexual conduct *not at issue* in this case. Even still, while *Marshall* and *Brown* did involve (5)(b)(i)(F) "lewd exhibition" sexual conduct, as stated above, that variant *is not analogous* to the "depiction" variant because each provision requires separate and distinct elements of proof. *Compare* § 45-5-625(5)(b)(i)(F) and (5)(b)(ii), MCA.

¶46    *New York v. Ferber*, 458 U.S. 747, 102 S. Ct. 3348 (1982), is likewise distinguishable, and therefore, so is *Zambrana v. State*, 118 A.3d 773 (Del. 2015) (as cited by the State, but not addressed by the Majority).

¶47    First, *Ferber* answered the specific constitutional question of whether a state statute criminalizing "the dissemination of material which shows children engaged in sexual conduct" violated First Amendment Free Speech protections. *Ferber*, 458 U.S. at 753,

---

[10] This is because Smith asserted only that (1) the district court erroneously admitted the victim's taped forensic interview; (2) the prosecutor committed misconduct during closing argument; and (3) the GPS monitoring requirement of § 45-5-625(4)(b), MCA, was facially unconstitutional. *Smith*, ¶ 2. We noted only that the challenged prosecutor statements "properly [spoke] to an element of the charged offense—the 'use of a child in an exhibition of sexual conduct,'" i.e., that "Smith wanted E.G. to dance like her mother, an exotic dancer, and was not directing her merely to play or climb on the pole in a non-sexual manner." *Smith*, ¶ 44 (citing § 45-5-625(1)(a), MCA). In other words, beyond that issue, the defendant's conduct underlying the offense was not pertinent to his appeal, and we did not "affirm" his conviction on any grounds related to his conduct. *See Smith*, ¶ 60; *compare* Opinion, ¶¶ 19-20.

30

102 S. Ct. at 3352.[11]  In holding that it did not, the Supreme Court weighed the State's "compelling" interests in preventing the "sexual exploitation and abuse of children" and "distribution of photographs and films depicting sexual activity by juveniles" against, among other First Amendment concerns, the "*de minimus*" artistic or scientific value "of permitting live performances and photographic reproductions of children engaged in lewd sexual conduct."  *Ferber*, 458 U.S. at 753-60, 762-63, 102 S. Ct. at 3352-56, 3357-58.[12] Noting, too, that any law infringing on fundamental constitutional protections must be narrowly tailored to the "nature of the harm," the Court held that the subject statute "listed with sufficient precision" the "forbidden acts to be depicted," i.e., "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals."  *Ferber*, 458 U.S. at 764-66, 102 S. Ct. at 3358-59 (quoting N.Y. Penal Law § 263.00(3), (4) (McKinney 1980)).

¶48    *Ferber*, a First Amendment obscenity case, did not construe the term "depiction," nor did the Court there "conclud[e] that a depiction can be a live performance of nudity for the sexual gratification of the audience," as stated by the Majority at Opinion, ¶ 22 (citing

---

[11] The petitioner, convicted for selling "two films . . . depicting young boys masturbating," argued specifically that the State was limited to prohibiting dissemination of materials qualifying as "legally obscene" under *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607 (1973).  *Ferber*, 458 U.S. at 750-56, 760-61, 102 S. Ct. at 3350-54, 3356.

[12] The Supreme Court "consider[ed] it unlikely that visual depictions of children performing sexual acts or lewdly exhibiting their genitals would often constitute an important and necessary part of a literary performance or scientific or educational work."  *Ferber*, 458 U.S. at 762-63, 102 S. Ct. at 3357.

31

*Ferber*, 458 U.S. at 764-65, 102 S. Ct. at 3358-59).[13]  *Compare Zambrana*, 118 A.3d at 777-78.  Instead, *Ferber* did no more than note that the subject state criminal statute prohibiting "the use of a child in a sexual performance" included specifically defined terms, and that a "performance" was defined by statute to mean "any play, motion picture, photograph or dance" or "any other visual representation exhibited before an audience." *Ferber*, 458 U.S. at 750-51, 102 S. Ct. at 3351 (quoting N.Y. Penal Law §§ 263.05, 263.00(4) (McKinney 1980)).  Whether a "depiction" did or did not include a "live performance" was never at issue and therefore never addressed.

¶49     Second, in *Zambrana*, the Delaware Supreme Court applied *Ferber*, which never construed the word "depiction," to conclude that, where used in the offense of Sexual Solicitation of a Child,[14] "depiction" encompassed "the presentation of a live

---

[13] *Compare* Opinion, ¶ 22, *with Ferber*, 458 U.S. at 764-67, 773-74, 102 S. Ct. at 3358-60, 3363-64 (Supreme Court noted "that the distribution of . . . other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection," such as "material with serious literary, scientific, or educational value" rarely, "if ever," captured within the ambit of the subject child pornography statute).  *See also Miller*, 413 U.S. at 22-26, 93 S. Ct. at 2614-16 ("[I]n the area of freedom of speech and press the courts must always remain sensitive to any infringement on genuinely serious literary, artistic, political, or scientific expression. . . .  [A] prurient, patently offensive depiction or description of sexual conduct must have serious literary, artistic, political, or scientific value to merit First Amendment protection.").

[14] Del Code Ann. tit. 11, § 1112A(a)(i) provides:  "A person is guilty of sexual solicitation of a child if the person, being 18 years of age or older, intentionally or knowingly . . . [s]olicits, requests, commands, importunes or otherwise attempts to cause any child to engage in a prohibited sexual act."  Del Code Ann. tit. 11, § 1100(7)(i) defines a "prohibited sexual act" to include "[n]udity, if such nudity is to be depicted for the purpose of the sexual stimulation or the sexual gratification of any individual who may view such depiction."  In construing "depiction" as used in § 1100(7)(i), the Court noted that the code provided a separate definition for "visual depiction." *Zambrana*, 118 A.3d at 778-79.

performance," and specifically, "live conduct intended to allow the viewer to observe nudity for the purpose of sexual gratification." *Zambrana*, 118 A.3d at 777-78 (citing *Ferber*, 458 U.S. at 764-65, 102 S. Ct. at 3358-59). There, the defendant admitted that he sent a text message to his 15-year-old neighbor "instruct[ing] her" to come into his house and "try on" a shirt he bought for his wife, and to "remove her bra," while he secretly watched her from behind the shower curtain, but argued that, as charged, solicitation required a "depiction" of "nudity," i.e., an "image in some tangible form, such as a picture, painting, or photograph." *Zambrana*, 118 A.3d at 774-75, 777. Misreading *Ferber*, which answered no such question, the Delaware Court concluded that while a "depiction" generally encompasses "tangible representations," it could also include "a live performance of nudity, a sexual act, or a simulation of sexual activity designed for the sexual gratification of the audience." *Zambrana*, 118 A.3d at 777-78 (citing *Ferber*, 458 U.S. at 764-65, 102 S. Ct. at 3358-59). Based on its misreading of *Ferber*, the Court held that "depiction," as used in the state's solicitation scheme, included "any presentation of *nudity solicited for sexual gratification*, whether or not it is recorded, stored or contained." *Zambrana*, 118 A.3d at 779-80 (emphasis added).[15]

¶50    We are not obligated to construe Montana's distinct sexual abuse of children statutory scheme in a like manner. Further, the factual and analytical distinctions between *Zambrana* and this case are: (1) Brennan was not charged with solicitation or any other

---

[15] The concurring opinion even went so far as to conclude that a "depiction" could include "a mental image." *Zambrana*, 118 A.3d at 780-81 (Strine, C.J., concurring).

such crime;[16] and (2) there was no allegation or evidence here that he propositioned A.H.; instructed, induced, or "tricked" her into a state of partial undress, or even asked or suggested that she get dressed in front of him; or watched her in hiding. Moreover, there is simply no way to read the (5)(b)(ii) "depiction" definition to mean that A.H.'s getting dressed in her bedroom, in the presence of her stepfather and unprovoked, was performative and "designed for the sexual gratification of [an] audience." *Zambrana*, 118 A.3d at 777-78. The Majority adopts the State's proposed definition of "depiction" as "a live performance" out of whole cloth and without any analysis.

¶51 In sum, while § 45-5-625, MCA, punishes multiple variants of sexual abuse of children, it also, and more specifically as charged and instructed here, punishes the "exhibition" of a "depiction of a child" in a state of partial undress, and only if for the purpose of humiliating the child or the sexual gratification of the offender. Section 45-5-625(1)(a) and (5)(b)(ii), MCA. The Majority avoids this common-sense construction of (5)(b)(ii) by erroneously conflating two distinct variants of sexual conduct, each with distinct elements of proof; replacing the (5)(b)(ii) definition with one on which the jury was not instructed; and concluding that the trial evidence could have supported a conviction under that definition.

### C. Majority Fails to Identify Evidence Establishing (5)(b)(i)(F) "Sexual Conduct" Beyond a Reasonable Doubt.

---

[16] *See* § 45-4-101(1), MCA ("[a] person commits the offense of solicitation when, with the purpose that an offense be committed, the person commands, encourages, or facilitates the commission of that offense").

¶52    Without any argument from the State that (5)(b)(i)(F) applied to the conduct at issue in this case, beyond its cursory, last-minute assertion that Brennan's conduct "overlapped" with either definition, the Majority strains to identify specific evidence or testimony establishing that Brennan knowingly "used" A.H. "in an exhibition of sexual conduct" defined as a "lewd exhibition of" her "genitals, breasts, pubic or rectal area, or other intimate parts."

¶53    Regarding the conduct pertinent to the sexual abuse of children offense, i.e., Brennan's alleged "entering A.H.'s bedroom" while the two were alone "and watching her change clothes or get dressed after a shower," A.H. testified that:

> If I was changing, like in my room like after a shower, I would like go to my room and get changed, and [Brennan] would just like walk in and like basically watch me change.

> [The last time it happened,] I took a shower, and then I went to my room, and I was changing, and he just like came in. And I don't remember what he was talking about. I wasn't focusing on him talking. I was *trying to cover myself and change*, so I was like *trying to hold my towel over*, but like put on clothes. So it was hard. So like *I had my back facing him as best as I could*. But he would kind of sit on the bed, and just like watch me.

(Emphasis added.)   Conversely, Brennan testified that he "never watched [A.H.] get dressed ever."

¶54    This scant evidence is insufficient for a rational juror to find beyond a reasonable doubt that Brennan committed the offense of sexual abuse of children, even under the more lenient definition of "sexual conduct" the Majority applies here. Even if the jury had been instructed on the "lewd exhibition" definition, there was no testimony to support a jury finding that, while wrapped in a bath towel and putting on her clothes with her back facing

toward him, A.H. exposed to Brennan, or Brennan actually viewed, a "lewd exhibition" of her "genitals, breasts, pubic or rectal area, or other intimate parts."

### D. District Court Correctly Concluded that State Failed to Prove the Elements of § 45-5-625(1)(a) and (5)(b)(ii), MCA, Beyond a Reasonable Doubt.

¶55 Undisputably, the District Court instructed the jury on the offense of Sexual Abuse of Children as defined by § 45-5-625(1)(a), MCA, and *only* instructed on the § 45-5-625(5)(b)(ii), MCA, definition of "sexual conduct." These instructions (Nos. 31-33) required the jury to find beyond a reasonable doubt that Brennan:

(1) knowingly "employed, used, or permitted the employment or use" of A.H. "in an exhibition of sexual conduct, actual or simulated"; with the exhibited "sexual conduct" being "a depiction of" A.H. "in the nude" or "a state of partial undress"; *and*

(2) that he did so "with the purpose to abuse, humiliate, harass, or degrade" her "or to arouse or gratify" his "own sexual response or desire or the sexual response or desire of any person."

The District Court correctly concluded that, based on the evidence presented and the instructions given, no rational juror could have found these elements proved beyond a reasonable doubt.

¶56 Perhaps the most glaring gap in proof in the State's case is that A.H.'s getting dressed after showering was not a "depiction of" her; it *was* her. The State cannot escape that (1) § 45-5-625(5)(b)(ii), MCA, "sexual conduct" is defined as a "*depiction* of a child in the nude or in a state of partial undress"; and (2) a "depiction" is most commonly understood to be a "representation," "likeness," or "portrayal" of a thing, not the actual thing. Despite the State's semantic gymnastics, it is irrefutable that A.H., independently existing in person in a state of semi-undress, was not a "*depiction*" of herself; in other

36

words, no rational juror could find that *she* "was *a depiction* of a child." Further, no rational juror could have concluded, based on the State's argument and the court's instruction, that A.H. gave "a live performance" for Brennan in her bedroom. *See* Opinion, ¶ 22 (citing *Ferber*, 458 U.S. at 764-65, 102 S. Ct. at 3358-59).

¶57 Moreover, as noted above, the offense of sexual abuse of a child as defined by § 45-5-625(1)(a) and (5)(b)(ii), MCA, as charged and instructed here, has two distinct elements of proof. The State was thus required to present evidence that Brennan knowingly used A.H. in an exhibition of sexual conduct, i.e., a depiction of her, and had the specific purpose to either humiliate her or sexually gratify himself. To that point, the jury heard evidence that A.H. felt "weird and uncomfortable" when Brennan was in her room while she dressed after showering, and Brennan's voice would sometimes be "slower and softer" while talking to her.

¶58 However, even if, *arguendo*, that evidence could have supported a jury inference that Brennan watched A.H. get dressed with the purpose to humiliate her or arouse his sexual desires, there was no evidence to support a finding that his *passive observation* constituted the act of knowingly employing or using A.H. "in an exhibition of sexual conduct," with the exhibited "sexual conduct" being a "depiction of" her in a state of partial undress, as instructed. Put simply, there was no evidence to support a jury finding that Brennan's *conduct* was that which § 45-5-625(1)(a) and (5)(b)(ii), MCA, explicitly criminalizes. *Compare* Opinion, ¶ 22 (holding that Brennan's "*conduct of observing* A.H. . . . *was a 'depiction'* that constituted sexual conduct for purposes of § 45-5-625(1)(a)" (emphasis added)).

¶59 If the Legislature intended to criminalize the act of in-person observation or viewing of a child in a state of undress under § 45-5-625(1)(a) and (5)(b)(ii), MCA, it could have done so. *See* § 45-5-625(1)(c) and (5)(b)(i)(G), MCA (specifically referencing the act of "view[ing]" or the role of "the viewer"). *See also Zinvest, LLC v. Gunnersfield Enters.*, 2017 MT 284, ¶ 26, 389 Mont. 334, 405 P.3d 1270 (where legislature did not use the same language in related provisions, "it is proper for us to assume that a different statutory meaning was intended"). Instead, it chose to use the words "exhibition" of a "depiction of a child." As much as we want to protect children from abuse, we are constrained by the Legislature's intent, as expressed in the plain language of its enactments.

¶60 I would therefore hold that the District Court correctly concluded that the trial evidence, even viewed in a light most favorable to the State, was not sufficient to sustain a conviction on the offense of Sexual Abuse of Children, as defined by § 45-5-625(1)(a) and (5)(b)(ii), MCA, based on the instructions given. Therefore, I would affirm the District Court's order granting Brennan's post-verdict motion for a judgment of acquittal. Because the Majority does not, I dissent.

/S/ KATHERINE M BIDEGARAY

Justice Ingrid Gustafson joins in the dissenting Opinion of Justice Katherine Bidegaray.

/S/ INGRID GUSTAFSON